IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHROMADEX, INC. and TRUSTEES OF DARTMOUTH COLLEGE, | ) ) ) | |
| | ) | C.A. No. 18-1434-CFC |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ELYSIUM HEALTH, INC., | ) ) | |
| Defendant. | ) | |

**COMBINED OPENING BRIEF IN SUPPORT OF
ELYSIUM HEALTH, INC.'S RULE 12(b)(1) MOTION TO DISMISS
CHROMADEX, INC.'S CLAIMS, AND ANSWERING BRIEF IN
<u>OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND</u>**

*Of Counsel:*

Donald R. Ware
dware@foleyhoag.com
Jeremy A. Younkin
jyounkin@foleyhoag.com
Marco J. Quina
mquina@foleyhoag.com
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, Massachusetts  02210
Phone:  (617) 832-1000

Dated:  May 5, 2020

ASHBY & GEDDES
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendant*

# TABLE OF CONTENTS

I.   INTRODUCTION AND SUMMARY OF ARGUMENT...................................

II.  NATURE AND STAGE OF PROCEEDINGS....................................................2

III.  BACKGROUND ...............................................................................................3

   A.  ChromaDex, Inc. and Healthspan Research, LLC ...........................................3

   B.  The Restated License Agreement ....................................................................4

IV.  ARGUMENT.......................................................................................................6

   A.  ChromaDex's Claims Must be Dismissed for Lack of Subject Matter
Jurisdiction because ChromaDex is not an Exclusive Licensee of the Patents-in-
Suit and does not Have Standing to Sue for Patent Infringement .........................6

     1.  ChromaDex Lacks Exclusive Rights because Dartmouth has Granted
Healthspan the Same Rights ..............................................................................7

     2.  Decisions by the Federal Circuit, this District, and other Courts in the Third
Circuit Support Dismissal...................................................................................9

     3.  It is Irrelevant that Healthspan and ChromaDex Share a Common Owner 14

     4.  ChromaDex's Claims Must be Dismissed for Lack of Standing ................15

   B.  Plaintiffs' Motion for Leave to Amend is Futile Because Healthspan Lacks
Standing for the Same Reasons that this Court Lacks Subject Matter Jurisdiction
over ChromaDex's Claims....................................................................................16

V.  CONCLUSION..................................................................................................17

# TABLE OF AUTHORITIES

## Cases

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
    2017 U.S. Dist. LEXIS 135562 (D. Del. Aug. 24, 2017)....................... 11, 12

*Hedges v. United States*,
    404 F.3d 744 (3rd Cir. 2005) .................................................................... 7, 8

*Mars, Inc. v. Coin Acceptors, Inc.*,
    527 F.3d 1359 (Fed. Cir. 2008) ............................................................ *passim*

*Medtronic Sofamor Danek USA, Inc. v. Globus Medical, Inc.*,
    637 F. Supp. 2d 290 (E.D. Pa. 2009)..................................................... 12, 13

*Monsanto Co. v. Aventis Cropscience S.A.*,
    226 F. Supp. 2d 531 (D. Del. 2002) ...................................................... 12, 13

*Novozymes A/S v. Genencor International, Inc.*,
    474 F. Supp. 2d 592 (D. Del. 2007) ........................................................... 14

*Ortho Pharmaceuticals Corp. v. Genetics Institute, Inc.*,
    52. F.3d 1026 (Fed. Cir. 1995) ..................................................................... 8

*Poly-America, L.P. v. GSE Lining Technology, Inc.*,
    383 F.3d 1303 (Fed. Cir. 2004) .................................................................. 14

*Rite-Hite Corp. v. Kelley Co.*,
    56 F.3d 1538 (Fed. Cir. 1995) ................................................................. 7, 9

*Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*,
    402 F.3d 1198 (Fed. Cir. 2005) .................................................................. 15

*Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*,
    620 F.3d 1305 (Fed. Cir. 2010) .................................................................. 15

*WiAV Solutions LLC v. Motorola, Inc.*,
    631 F.3d 1257 (Fed. Cir. 2010) ...................................................... 10, 11, 12

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

ChromaDex, Inc.'s ("ChromaDex") claims against Elysium Health, Inc. ("Elysium") must be dismissed, and Plaintiffs' motion for leave to add Healthspan Research, LLC ("Healthspan") as a plaintiff (D.I. 49) must be denied for the same reason:  ChromaDex and Healthspan lack standing to sue for patent infringement, and this Court therefore lacks subject matter jurisdiction over their claims.

ChromaDex and Healthspan each claim to have standing to assert claims for infringement of the patents-in-suit against Elysium as licensees of Plaintiff Trustees of Dartmouth College ("Dartmouth"), the alleged owner of the patents-in-suit.  However, it is black-letter law that a patent licensee does not have standing to sue unless it holds exclusive rights to the patents-in-suit with respect to the allegedly infringing conduct, *i.e.,* in order to have standing, it must be an *exclusive licensee*.

ChromaDex and Healthspan base their alleged standing on an amended and restated agreement with Dartmouth, entered in September 2019, but made effective as of March 13, 2017, eighteen months before this suit commenced.  That agreement, disclosed to Elysium's counsel for the first time in April 2020, grants the same patent rights to ***both*** ChromaDex and Healthspan and gives ***both*** companies the right to grant sublicenses.  They cannot both be Dartmouth's "exclusive" licensee of the same patent rights, and since they both were in fact

1

granted the same rights, neither qualifies as an exclusive licensee.  In other words, because there are *two* entities—ChromaDex and Healthspan—that are able to assert the same rights against the same Defendant for the same allegedly infringing conduct, neither licensee possesses the requisite exclusivity to have standing to sue, and the Court lacks subject matter jurisdiction over their claims for patent infringement.  ChromaDex's claims must be dismissed from the case, and the motion to add Healthspan must be denied as futile.

## II.   NATURE AND STAGE OF PROCEEDINGS

ChromaDex and Dartmouth filed this lawsuit on September 17, 2018 alleging that Elysium infringes U.S. Patent Nos. 8,383,086 and 8,197,807 (the "patents-in-suit").  In their original complaint, Plaintiffs allege that Dartmouth is the owner of the patents-in-suit, and that ChromaDex "is the exclusive licensee" under those patents.  Complaint, D.I. 1 at ¶4.

On April 24, 2020, Plaintiffs moved for leave to amend their complaint to add Healthspan as a plaintiff (D.I. 49) ("Plaintiffs' Motion" or the "Motion"), now alleging that both Healthspan and ChromaDex "are exclusive licensees" under the patents-in-suit.

The case is in the early stages of discovery.

## III.    BACKGROUND

### A.    ChromaDex, Inc. and Healthspan Research, LLC

ChromaDex and Healthspan are separate entities with different corporate forms, organized under the laws of different states.  ChromaDex is a California corporation, while Healthspan is a Delaware limited liability company. Declaration of Adam W. Poff (D.I. 50) ("Poff Decl.") Ex. A (Proposed Amended Complaint) at ¶¶ 6-7.  They are sister companies, each a wholly-owned subsidiary of ChromaDex Corporation, a publicly-held corporation organized under Delaware law.  Ex. 1 (ChromaDex Corp. 2019 Form 10-K) at 36.[1]  The parent company, ChromaDex Corporation, is not a current or proposed party to this case and has no rights in the patents-in-suit.  The corporate relationships are shown in the following diagram (adapted from ChromaDex Corporation's SEC disclosures):



Figure 1
(**Source:**  Ex. 1 at 36.)

---

[1] Exhibit 1, attached to this brief, is an excerpted copy of ChromaDex Corporation's Form 10-K, filed with the SEC, for the fiscal year ended December 31, 2019.

**B.     The Restated License Agreement**

In September 2019, ChromaDex and Dartmouth entered into an agreement entitled "Dartmouth Restated and Amended Exclusive License Agreement."  Poff Decl. Ex. D (hereinafter, the "Restated License Agreement").  This agreement was made effective retroactively as of March 13, 2017, the day after Healthspan was acquired by ChromaDex Corporation.  *Id.* at 1; *see also* Ex. 1 at 4.  This March 2017 effective date is eighteen months before the date Plaintiffs brought suit in this action (September 2018) and months before the earliest date Plaintiffs have alleged Elysium was making, using, or selling the allegedly infringing product (July 2017). *See* Poff Decl. Ex. A at ¶ 24.

The Restated License Agreement expressly cancelled and superseded a prior license agreement, entered in 2012, between ChromaDex and Dartmouth.  Poff Decl. Ex. D at § 10.04.  *See also* Poff Decl. Ex. C (hereinafter, the "2012 License Agreement").  Thus, in entering the Restated License Agreement, ChromaDex and Dartmouth agreed that the rights set forth in the Restated License Agreement would apply for the period on and after March 13, 2017.

The Restated License Agreement grants licenses to the patents-in-suit, with the same scope, in the same field, and in the same territory, to ***both*** ChromaDex and Healthspan.  Section 2.01 of the agreement states, in relevant part:

4

> License Grant. Dartmouth hereby grants **to Company and its
> Affiliates** an <u>exclusive</u>, royalty-bearing license under Dartmouth
> Patent Rights to make, have made, use, and/or sell Licensed Products
> in the Field in the Territory…

Poff Decl. Ex. D at § 2.01 (bold emphasis added).  ChromaDex is the "Company."

*Id.* at 1.  The agreement's definition of "Affiliates" refers to entities listed on

Schedule 1, which lists Healthspan.  *Id.* at § 1.05 and p. 12.  Thus, under the

express terms of the Restated License Agreement, **both** ChromaDex and

Healthspan were granted a license by Dartmouth for the same "Licensed Products"

within the same "Field" in the same "Territory."  They are, in other words, *non-

exclusiv*e licensees of the same patent rights.

In addition, **both** ChromaDex and Healthspan have the express right to grant

sublicenses.  Section 2.02 of the Restated License Agreement states:

> <u>Sublicenses</u>. **Company and its Affiliates** shall have the right to grant
> sublicenses to third parties under Dartmouth Patent Rights to make,
> have made, use and sell the Licensed Products with the consent of
> Dartmouth, which consent shall not be unreasonably withheld….

*Id.* at § 2.02 (bold emphasis added).  Because both have the power to grant

sublicenses to third parties, neither has the exclusive power independently to

exclude third parties from practicing the licensed patents.

A September 2019 side letter agreement (the "Side Letter Agreement")

between ChromaDex and Dartmouth, entered contemporaneously with the

Restated License Agreement, reiterates that the Restated License Agreement was

to be "effective March 13, 2017."  Poff Decl. Ex. E.  Moreover, in their Motion,

ChromaDex and Dartmouth admitted, and have represented to the Court,

Healthspan's status as a licensee since March 13, 2017, citing their Side Letter

Agreement.  Plaintiffs' Motion, D.I. 49, at 3 ("ChromaDex and Dartmouth entered

into a Side Letter Agreement confirming their mutual treatment of Healthspan as

an exclusive licensee since… March 13, 2017….").

Plaintiffs did not disclose the Restated License Agreement to Elysium until

April 3, 2020.  *See* Poff Decl. Ex. F.  Elysium first learned of the Side Letter

Agreement when it was filed with this Court in conjunction with Plaintiffs'

Motion.

IV.   **ARGUMENT**

A.   **ChromaDex's Claims Must be Dismissed for Lack of Subject Matter Jurisdiction because ChromaDex is not an Exclusive Licensee of the Patents-in-Suit and does not Have Standing to Sue for Patent Infringement**

ChromaDex's claims must be dismissed for lack of subject matter

jurisdiction because, as the Restated License Agreement establishes, ChromaDex

does not hold exclusive rights to the patents with respect to Elysium's allegedly

infringing conduct and therefore lacks standing to sue.  Healthspan, another

licensee, not only has the same rights within the same territory and field but also

has the right to license those rights, including to Elysium.  *See* Restated License

Agreement, Poff Decl. Ex. D at §§ 2.01 and 2.02.  More specifically, Section 2.01

of the Restated License Agreement grants both ChromaDex and Healthspan the

same license.  *Id.*  Section 2.02 grants both ChromaDex and Healthspan the right to

sublicense their rights.  *Id.*  Because there is a second licensee that holds the same

purportedly exclusive rights, including the right to grant a sublicense to Elysium,

ChromaDex is not an exclusive licensee with standing to sue for patent

infringement.  This Court therefore lacks subject matter jurisdiction over

ChromaDex's claims.

### 1.   ChromaDex Lacks Exclusive Rights because Dartmouth has Granted Healthspan the Same Rights

It is settled, *en banc* Federal Circuit law that only (1) a patent owner or (2)

its exclusive licensee has standing to sue for patent infringement.  *Rite-Hite Corp.*

*v. Kelley Co.*, 56 F.3d 1538, 1552 (Fed. Cir. 1995) (en banc).  The restriction has

constitutional dimension under Article III.  *Mars, Inc. v. Coin Acceptors, Inc.*, 527

F.3d 1359, 1367-68 (Fed. Cir. 2008) ("Only a patent owner or an exclusive

licensee can have constitutional standing to bring an infringement suit; a non-

exclusive licensee does not.").  In this case, Dartmouth asserts standing as the

alleged owner of the patents-in-suit and ChromaDex claims to have standing as

"the exclusive licensee" of those patents.  *See* Complaint, D.I. 1 at ¶4.

The standard for establishing the factual basis for this Court's subject matter

jurisdiction over ChromaDex's claims is a "demanding" one, and ChromaDex

bears the burden of meeting it in response to a Rule 12(b)(1) challenge.  *Hedges v.*

*United States,* 404 F.3d 744, 750 (3rd Cir. 2005). "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion. Furthermore, the district court may not presume the truthfulness of plaintiff's allegations, but rather must evaluate for itself the merits of the jurisdictional claims." *Id.*; *see also Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1032-33 (Fed. Cir. 1995) ("The burden of demonstrating standing falls to [the plaintiff.]").

ChromaDex cannot meet its burden because the Restated License Agreement establishes that ChromaDex does not have the exclusive rights necessary to assert claims for patent infringement in this case. Specifically, ChromaDex is not Dartmouth's exclusive licensee with respect to the rights allegedly infringed by Elysium. In their Motion to Amend, Plaintiffs argue that simply because the Restated License Agreement includes the word "exclusive," it therefore "cannot be seriously disputed" that ChromaDex is "an exclusive licensee." *See* Plaintiff's Motion at 4. This argument could not be more wrong. The Federal Circuit has long held that "it is the licensee's beneficial ownership of a right to prevent others from making, using or selling the patented technology that provides the foundation for co-plaintiff standing, not simply that the word 'exclusive' may or may not appear in the license." *Ortho*, 52 F.3d at 1032.

8

As the *en banc* Federal Circuit held in *Rite-Hite*, "to be an exclusive licensee for standing purposes, a party must have received… the patentee's express or implied promise **that others shall be excluded from practicing the invention within that territory as well**."  56 F.3d at 1552 (emphasis added).   In other words, a company cannot be the "exclusive" licensee of a patent if others are also given a license covering the same field and the same territory.

Neither ChromaDex nor Healthspan is an exclusive licensee; they merely are *non-exclusive* licensees of the patent rights.  Dartmouth granted the same rights to both ChromaDex and Healthspan, and both claim to have suffered injury on account of Elysium's allegedly infringing conduct.  Patent rights held by two different entities that are allegedly injured by the same conduct cannot possibly be exclusive, as a matter of law and logic.

## 2.   Decisions by the Federal Circuit, this District, and other Courts in the Third Circuit Support Dismissal

Unsurprisingly, numerous courts, including decisions from this district, have held that "co-exclusive" licensees of the same rights (even affiliated corporate entities) cannot be exclusive licensees for standing purposes.  *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1367-68 (Fed. Cir. 2008) is directly on point.  In *Mars*, the Federal Circuit affirmed denial of a motion to amend to add the patentee's subsidiary (a company called MEI) to the complaint as futile because one of MEI's sister companies also had a license to the patents within MEI's

supposedly exclusive territory.  The Federal Circuit explained that "if the patentee *allows* others to practice the patent in the licensee's territory, then the licensee is *not* an exclusive licensee."  *Id.* at 1368 (emphases in original).  MEI and the patentee had agreed that one of MEI's sister companies, MEI-UK, "will continue to have a non-exclusive right to exploit… [the patents] in any country of the world in exchange for a royalty…."  *Id.*  This agreement, the Federal Circuit explained, "ma[d]e clear that Mars had allowed MEI-UK to practice the patents in the United States….  MEI was not, therefore, the exclusive licensee to the patent-in-suit in the United States prior to 1996.  It consequently lacks constitutional standing."  *Id.* The patent rights held by ChromaDex and Healthspan here are exactly the same as the rights held by MEI and its sister company in *Mars*.  Under the Federal Circuit's holding in *Mars*, neither ChromaDex nor Healthspan has standing to sue.

By contrast, in *WiAV Solutions LLC v. Motorola, Inc.*, the plaintiff (WiAV) was the only licensee that had exclusivity in the wireless handset field in which the accused infringer operated; other licensees' rights were in different fields.  631 F.3d 1257, 1267 (Fed. Cir. 2010) ("[Patentee] granted WiAV the exclusive right to practice and enforce the [patents] in the Wireless Handset field, and neither [other licensee] nor [additional licensee] has the right to extend licenses to the Defendants in this area.").  In evaluating these facts, the Federal Circuit explained that "[t]he question is whether WiAV… has the right under the patents to exclude ***the***

10

***Defendants*** from engaging in the alleged infringing activity and therefore is injured by the Defendants' conduct." *Id.* (emphasis in orginal).  Because WiAV was the only licensee with an exclusive license in the wireless handset field in which the defendant's conduct occured, WiAV had the ability to independently exclude the defendant, and thus had standing.

That is plainly not the case here.  The licenses granted to ChromaDex and Healthspan expressly cover the same products, the same field, and the same territory.  In addition, the Restated License Agreement gives both ChromaDex and Healthspan the right to grant sublicenses.  For these reasons, either company could license Elysium's allegedly infringing activity, and neither has the power to independently exclude Elysium from engaging in that activity.  Because neither has exclusive rights, neither has standing to sue for patent infringement.

Another decision in this district, *Acceleration Bay LLC v. Activision Blizzard, Inc.*, is instructive.  2017 U.S. Dist. LEXIS 135562 (D. Del. Aug. 24, 2017) (Andrews, J.).  In *Acceleration Bay*, Judge Andrews granted a motion to dismiss for lack of standing where the prior owner of the patent had granted a license to Sony in the field of games on Sony's gaming platform, with the express right to sublicense.  Applying *WiAV*, the court explained:

> Defendants had the ability to obtain a license from Sony at all relevant
> times because Sony could have granted Defendants licenses….
> Because of this, Plaintiff has not shown that it had the right under the
> patents to exclude the Defendants from engaging in the alleged

11

infringing activity. It therefore could not have been injured as a result.
Plaintiff lacks standing to sue Defendants with respect to games
covered by the Sony license.

*Id.* at *9-10.  Likewise here, Healthspan could grant a license to Elysium under the

express terms of the Restated License Agreement.  ChromaDex cannot have

suffered injury cognizable under the patent statute as a result of any of Elysium's

allegedly infringing activity because it did not have the right to exclude Elysium.

Similarly, Judge Robinson in *Monsanto Co. v. Aventis Cropscience S.A.*, 226

F. Supp. 2d 531, 539-40 (D. Del. 2002) dismissed Monsanto's claims relating to

allegedly infringing corn because Monsanto shared co-exclusive rights in that field.

In 1994, the patentee had settled a patent infringement litigation with Monsanto by

entering into a license agreement.  However, because the patentee had already

granted DeKalb exclusive rights to the patents in the corn field, the license granted

to Monsanto was co-exclusive, and the patentee's license with DeKalb was

amended to grant only co-exclusive rights.  *Id.* at 534-535.[2]  Based on these facts,

Judge Robinson reasoned:

The [patentee] granted Monsanto and DeKalb "co-exclusive" licenses
to the Comai patents in corn, which enabled each to make, use, sell
and license the patents to anyone without regard to the other. Thus,

---

[2] At the time of the license agreement, Monsanto and DeKalb were related
corporate entities as another court would later observe in applying *Monsanto*.  *See
Medtronic Sofamor Danek USA, Inc. v. Globus Med., Inc.*, 637 F. Supp. 2d 290,
301 (E.D. Pa. 2009) ("Monsanto and DeKalb, the original co-licensees in
*Monsanto*, were related corporate entities.").

> these "co-exclusive" licenses amounted to nothing more than
> nonexclusive licenses, which confer no standing on a party….

*Id.* at 539.

Other courts in the Third Circuit have likewise held that licenses held by multiple sister companies destroy exclusivity.  For example, *Medtronic Sofamor Danek USA, Inc. v. Globus Med., Inc.*, 637 F. Supp. 2d 290 (E.D. Pa. 2009) is yet another case directly on point.  In *Medtronic*, plaintiffs "based their claims for lost profits and injunctive relief solely on evidence of injuries suffered by Medtronic USA," a subsidary of the patentee.  *Id.* at 293.  However, the agreement which Medtronic USA relied on for standing also granted co-exclusive rights to its sister companies (MPRO and Deggendorf) and permitted those sister companies to sell products to others.  *Id.* at 303-307.  The court concluded that this grant of rights destroyed exclusivity, and standing with it.  *Id*. at 307-08.  Relying on *Mars* and *Monsanto*, the court rejected arguments that standing should exist because the co-exclusive licensees were sister companies, observing that "constitutional standing is determined by the exclusionary rights held by the licensee, not by the relationship among co-licensees."  *Id.* at 301.  In other words, the standing inquiry must focus on "whether each plaintiff ***independently*** satisfies the constitutional standing element of injury in fact."  *Id.* at 303 (emphasis added).

In summary, the caselaw consistently holds that a licensee cannot share the same "exclusive" rights with another licensee in order to satisfy the constitutional

13

requirement of standing. ChromaDex's claims must be dismissed, and Healthspan cannot be added as a proper plaintiff.

### 3.    It is Irrelevant that Healthspan and ChromaDex Share a Common Owner

As the above cases show, it is irrelevant that ChromaDex and Healthspan are sister companies owned by the same parent company, ChromaDex Corporation. They are separate legal entities, and corporate form matters for purposes of injury in patent cases.  ChromaDex and Healthspan "may not enjoy the advantages of their separate corporate structure and, at the same time, avoid the consequential limitations of that structure."  *Poly-America, L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1311 (Fed. Cir. 2004).   As the Federal Circuit explained in reversing a district court's blurring of corporate lines between sister companies in assessing injury:  "Poly-America and Poly-Flex have a common parent corporation and are not simply divisions of a single corporation, but are separate corporate entities. Their parent has arranged their corporate identities and functions to suit its own goals and purposes, but it must take the benefits with the burdens."  *Id.*;  *see also Novozymes A/S v. Genencor Int'l, Inc.*, 474 F. Supp. 2d 592, 604 (D. Del. 2007) (Jordan, J.) ("Novozymes may not blur the legal distinction between itself and NZNA to recover damages….").  As the Federal Circuit reasoned in finding that a non-exclusively licensed sister company to a patent owner lacked standing, "if we were to find standing on these facts, this would mean that any company related to a

14

patent owner could be treated as an exclusive licensee…. This is plainly contrary

to our case law…." *Spine Sols., Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620

F.3d 1305, 1318 (Fed. Cir. 2010).

### 4.    ChromaDex's Claims Must be Dismissed for Lack of Standing

For these reasons, and because the Restated License Agreement grants both

ChromaDex and Healthspan the same license effective March 13, 2017,

ChromaDex is not currently an exclusive licensee, was not in September 2018

when this action was instituted, and was not in July 2017, the earliest date Elysium

is alleged to have infringed.

In addition, citing their Side Letter Agreement, ChromaDex and Dartmouth

have admitted, and have represented to the Court, that the Restated License

Agreement merely memorialized an already-existing understanding between

Dartmouth and ChromaDex that treated Healthspan as a licensee beginning in

March 2017.  Poff Decl. Ex. E; Plaintiffs' Motion, D.I. 49 at 3.  Because

ChromaDex, by its own admission, did not have standing as of the date this

litigation was filed it must be dismissed, and that standing defect cannot be cured.

*See Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir.

2005) ("In the area of patent infringement… if the original plaintiff lacked Article

III initial standing, the suit must be dismissed and the jurisdictional defect cannot

be cured….").

**B.     Plaintiffs' Motion for Leave to Amend is Futile Because Healthspan Lacks Standing for the Same Reasons that this Court Lacks Subject Matter Jurisdiction over ChromaDex's Claims**

Plaintiffs' motion for leave to amend to add Healthspan as a plaintiff is futile because Healthspan also lacks standing.  *See Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1367-68 (Fed. Cir. 2008) (affirming denial on futility grounds of motion to amend to add party that lacked standing).  Healthspan is not an exclusive licensee of the patents-in-suit for the same reasons that ChromaDex is not an exclusive licensee.  As explained above with respect to ChromaDex, Healthspan holds identical rights to the patents as ChromaDex, covering the same products, the same field, and the same territory.  At all relevant times, ChromaDex could have granted a license to Elysium under the express terms of the Restated License Agreement.  Healthspan cannot have suffered injury under the patent statute as a result of any of Elysium's allegedly infringing activity because it did not have the right to exclude Elysium.  Like ChromaDex, Healthspan is not an exclusive licensee, and it therefore lacks constitutional standing.  This Court could not adjudicate Healthspan's claim for patent damages because the Court would lack subject matter jurisdiction over its claim.  Plaintiffs' motion for leave to amend the pleadings should be denied as futile.

16

## V.    CONCLUSION

For the foregoing reasons, the Court should dismiss ChromaDex, Inc.'s claims for lack of subject matter jurisdiction, and should deny Plaintiffs' motion for leave to amend the pleadings to add Healthspan Research, LLC as a plaintiff because Healthspan lacks standing to sue.


*Of Counsel:*

Donald R. Ware
dware@foleyhoag.com
Jeremy A. Younkin
jyounkin@foleyhoag.com
Marco J. Quina
mquina@foleyhoag.com
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, Massachusetts  02210
Phone:  (617) 832-1000

Dated:  May 5, 2020

ASHBY & GEDDES

*/s/ Steven J Balick*

_____
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendant*

17

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type, font and word limitations set forth in this Court's Standing Order Regarding Briefing in All Cases, dated November 6, 2019. This brief contains 3,680 words (excluding the title page, table of contents, table of authorities, signature block, and certificate of compliance).  This brief has been prepared in 14-point Times New Roman.

Date: May 5, 2020

ASHBY & GEDDES

*/s/ Steven J. Balick*

Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendant*

18