IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHROMADEX, INC. and TRUSTEES OF DARTMOUTH COLLEGE, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | C.A. No. 18-1434-CFC |
| v. | ) ) ) | |
| ELYSIUM HEALTH, INC., | ) ) | |
| Defendant. | ) | |

**REPLY BRIEF IN SUPPORT OF
ELYSIUM HEALTH, INC.'S RULE 12(b)(1) MOTION TO DISMISS
<u>CHROMADEX, INC.'S CLAIMS</u>**

*Of Counsel:*

Donald R. Ware
dware@foleyhoag.com
Jeremy A. Younkin
jyounkin@foleyhoag.com
Marco J. Quina
mquina@foleyhoag.com
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, Massachusetts  02210
Phone:  (617) 832-1000

Dated:  May 26, 2020

ASHBY & GEDDES
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendant*

{01568146;v1 }

# **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................1

II.  ARGUMENT......................................................................................................2

  A.  ChromaDex and Healthspan Do Not Have Standing Because Each Has the Contractual Right to License Elysium..................................................................2

  B.  Courts Do Not Engage in Veil Piercing in Evaluating Whether a License is Exclusive...............................................................................................................9

III. CONCLUSION ................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
    2017 U.S. Dist. LEXIS 135562 (D. Del. Aug. 24, 2017) ....................... 4, 5, 6

*Case Financial, Inc. v. Alden*,
    2009 Del. Ch. LEXIS 153 (Del. Ch. Aug. 21, 2009) ..................................... 10

*Copperhead Industrial, Inc. v. Change & Dresser, Inc.*,
    2019 U.S. Dist. LEXIS 218092 (D. Ala. Dec. 19, 2019) ............................... 8

*Culverhouse v. Paulson & Co.*,
    133 A.3d 195 (Del. 2016) ............................................................................ 10

*Deckers Corp. v. United States*,
    752 F.3d 949 (Fed. Cir. 2014) ....................................................................... 4

*Hill-Rom Co. v. GE*,
    2014 U.S. Dist. LEXIS 108428 (E.D. Va. 2014) ....................................... 7, 8

*Luminara Worldwide, LLC v. Liown Electronics Co.*,
    2015 U.S. Dist. LEXIS 51449 (D. Minn. Apr. 20, 2015) .............................. 6

*Luminara Worldwide, LLC v. Liown Electronics Co.*,
    814 F.3d 1343 (Fed. Cir. 2016) ..................................................................... 6

*Mabon, Nugent Co. v. Texas American Energy Corp.*,
    1990 Del. Ch. LEXIS 46 (Del Ch. Apr. 12, 1990) ........................................ 9

*Mars, Inc. v. Coin Acceptors, Inc.*,
    527 F.3d 1359 (Fed. Cir. 2008) ..................................................................... 4

*Mobil Oil Corp. v. Linear Films, Inc.*,
    718 F.Supp. 260 (D. Del. 1989) ................................................................... 10

*Morrow v. Microsoft Corp.*,
    499 F.3d 1332 (Fed. Cir. 2007) ..................................................................... 3

*Novartis Pharmaceuticals Corp. v. Teva Pharmaceuticals USA, Inc.*,
    2009 U.S. Dist. LEXIS 97635 (D.N.J. 2009) ................................................... 6

*Ortho Pharmaceuticals Corp. v. Genetics Institute, Inc.*,
    52. F.3d 1026 (Fed. Cir. 1995) ....................................................................... 3

*Poly-America, L.P. v. GSE Lining Technology, Inc.*,
    383 F.3d 1303 (Fed. Cir. 2004) ..................................................................... 6

*Rite-Hite Corp. v. Kelley Co.*,
    56 F.3d 1538 (Fed. Cir. 1995) ....................................................................... 4

*WiAV Solutions LLC v. Motorola, Inc.*,
    631 F.3d 1257 (Fed. Cir. 2010) ............................................................. *passim*

*Zubik v. Zubik*,
    384 F.2d 267 (3rd Cir. 1967) ....................................................................... 10

## I.     INTRODUCTION

Plaintiffs do not deny that Dartmouth granted ChromaDex and Healthspan the same rights.  Nor do they deny that Healthspan and ChromaDex each has the express contractual right to grant licenses under the patents to others, including Elysium.  Under binding Federal Circuit law, including the *WiAV* case on which Plaintiffs so heavily rely, where two separate entities each has the legal right to authorize an alleged infringer's conduct, neither has exclusive rights and, therefore, neither has standing to sue for the alleged infringement.

Attempting to avoid this straightforward application of black letter law, Plaintiffs assert that neither ChromaDex nor Healthspan *would have* exercised its right to grant Elysium a sublicense absent the assent of the other.  But even if true, this assertion is legally irrelevant.  Two non-exclusive licensees cannot both obtain standing to sue by claiming that they intend to coordinate their sublicensing activities.  More fundamentally, the standing analysis turns on the *legal rights* held by each licensee, not on each licensee's subjective intent at a particular point in time to authorize or not authorize the allegedly infringing conduct.  The fact that each licensee is empowered to grant sublicenses is dispositive of standing; it makes no difference whether either licensee would have exercised that power.

Plaintiffs' argument that this Court should treat ChromaDex and Healthspan as a single entity because they share common management is contrary to bedrock

law that corporate separateness must be respected. Delaware courts do not pierce the corporate veil so easily. Numerous courts have declined to treat licensees that are related companies as a single entity for patent standing, and Plaintiffs do not cite to a single case applying veil piercing in these circumstances.

In a misplaced effort to distract the Court, Plaintiffs devote nearly half their brief to irrelevant recitations of ChromaDex's other grievances against Elysium—all unproven allegations made in proceedings in other courts.[1] None of these allegations claims an injury to exclusive patent rights. The terms of the Restated License Agreement are clear, as is the law of standing. Two separate licensees cannot each have the same right to grant a sublicense covering the same allegedly infringing activity and still claim exclusivity. Both Chromadex and Healthspan lack standing, and this Court lacks subject matter jurisdiction over their claims.

## II. ARGUMENT

### A. ChromaDex and Healthspan Do Not Have Standing Because Each Has the Contractual Right to License Elysium

Plaintiffs argue that this Court should ignore ChromaDex and Healthspan's contractual rights and rule that each has standing based on the subjective state of mind of ChromaDex executives. But standing to sue for infringement turns on the

---

[1] Plaintiffs fail to mention Elysium's counterclaims against ChromaDex in the California action for breach of contract, fraud, and patent misuse. They also ignore that it was Elysium that sued ChromaDex, not the other way around, in the first of the two consolidated cases in New York.

legal rights held by the purported claimant, not on the claimant's subjective intentions, or the willingness of multiple non-exclusive licensees to act collectively. As the Federal Circuit has explained, "[i]n determining whether a party holds the exclusionary rights, we determine ***the substance of the rights conferred*** on that party." *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1340 n.7 (Fed. Cir. 2007) (emphasis added). "[I]t is the licensee's beneficial ownership of ***a right to prevent*** others from making, using or selling the patented technology that provides the foundation for co-plaintiff standing." *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1031-32 (Fed. Cir. 1995) (emphasis added).

Under Federal Circuit law, the sum of non-exclusive parts does not make an exclusive whole. Non-exclusive licensees cannot become exclusive licensees by choosing to pool their rights together, including against a common foe or competitor. For example, in *Rite-Hite v. Kelley Co.*, it did not matter to the *en banc* Federal Circuit whether the independent sales organizations holding non-exclusive rights banded together to sue the defendant, as in fact they did. 56 F.3d 1538, 1552-54 (Fed. Cir. 1995). The Federal Circuit did not treat their aggregated rights as exclusive, whether they were acting collectively or otherwise. Plaintiffs' core thesis is thus contrary to *en banc* Federal Circuit law. If Plaintiffs' thesis were accepted, non-exclusive licensees would have standing to sue for patent infringement so long as all of them joined as co-plaintiffs and each swore it would

refuse to license the defendant without the others' consent. That is not the law of patent infringement standing.

Plaintiffs are also wrong in asserting that multiple "exclusive" licensees, each having the legal right to license the accused infringer, can exist in the same field. As the *en banc Rite-Hite* court explained, an exclusive licensee must have rights sufficient to ensure that "others shall be excluded from practicing the invention within [its] territory…." *Id.* at 1552. By contrast, nonexclusive licensees lack "the right to exclude others" from their territory. *Id.*; *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1368 (Fed. Cir. 2008).

*WiAV Solutions LLC v. Motorola, Inc.*, 631 F.3d 1257, 1264-65 (Fed. Cir. 2010), on which Plaintiffs rest their entire argument, does not hold otherwise.[2] In *WiAV*, the other licensees did not have licensing rights in the "same" field as WiAV, as ChromaDex falsely asserts. In fact, the other licensees' licensing rights were much narrower. They were limited to licensing specific products, specific companies, or unrelated technologies. *Id.* at 1262, 1267-68.[3] None of their rights

---

[2] Nor could it. A Federal Circuit panel is bound by prior precedential panel decisions like *Mars* and, even more so, by the Federal Circuit's *en banc* decisions like *Rite-Hite*. *Deckers Corp. v. United States*, 752 F.3d 949, 965 (Fed. Cir. 2014).

[3] Rockwell and Qualcomm could only license their own affiliates. Mindspeed could only license Mindspeed products. Conexant could only license Conexant products. Sipro could only license Mindspeed products for wireless LAN. *WiAV*, 631 F.3d at 1261. The defendants in *WiAV* were not Rockwell or Qualcomm affiliates and were not selling Mindspeed or Conexant products. *Id.* at 1267-68.

encompassed the ability to license defendants' infringing conduct. Thus there was no other licensee encroaching upon the exclusive patent rights that WiAV asserted were injured by Defendants' infringing conduct. As *WiAV* explains, "[t]he question is whether WiAV has shown that it has the ***right*** under the patents to exclude the *Defendants* from engaging in the alleged infringing activity and therefore is injured by the Defendants' conduct." *Id.* at 1267 (first emphasis added). WiAV had standing because only WiAV had the "exclusive ***right*** to practice and enforce the [patents] in" the area in which the Defendants' allegedly infringing conduct occurred. *Id.* at 1267 (emphasis added).

The *WiAV* court's analysis thus turned on ***legal rights***, not on any party's subjective willingness (or not) to license the accused infringer. As the Federal Circuit explained, "[b]ecause an exclusive licensee derives its standing from the exclusionary ***rights*** it holds, it follows that its standing will ordinarily be coterminous ***with those rights***." 631 F.3d at 1266 (emphases added). In other words, what was determinative for standing purposes was not whether the other licensees were ***willing*** to grant licenses to the accused infringer, but rather that "neither Rockwell Science Center, Mindspeed, Conexant, Skyworks, Qualcomm, nor Sipro has the ***right*** to extend licenses to the Defendants." *Id.* at 1267 (emphasis added).

Similarly, in *Acceleration Bay LLC v. Activision Blizzard, Inc.*, 2017 U.S.

Dist. LEXIS 135562 (D. Del. Aug. 24, 2017), nowhere does Judge Andrews consider whether the other licensee (Sony) would in fact refuse to grant a license. Rather, as Plaintiffs are forced to acknowledge, the plaintiff's standing was destroyed because both it and Sony had the "***ability***" to grant licenses. *Id.* at *8 ("I think the implication [of *WiAV*] was that if the third parties had the ability to issue a license to the defendants, then the plaintiffs would not have standing to sue.").

Likewise, in *Poly-America, L.P. v. GSE Lining Technology, Inc.*, the Federal Circuit found that Poly-America's sister company and licensee, Poly-Flex, did not have exclusive rights, even though both companies "seem to share interests as two entities collaborating in the manufacture and sale of textured landfill liners." 383 F.3d 1303, 1311 (Fed. Cir. 2004). In other words, these sister companies' shared interests were legally irrelevant to whether Poly-Flex was an exclusive licensee.[4]

---

[4] Plaintiffs' reliance on *Luminara Worldwide, LLC v. Liown Electronics Co.*, 2015 U.S. Dist. LEXIS 51449 (D. Minn. Apr. 20, 2015), is misplaced. In that case, unlike here, the other licensee, Disney, "was not permitted to license the [technology] merely for the purposes of licensing the patents." *Id.* at *13. Plaintiffs also overlook the Federal Circuit's subsequent decision in the same case agreeing that if the agreement had permitted Disney to "license any entity… [plaintiff] would not have had exclusionary rights to the asserted patents." *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1348 (Fed. Cir. 2016).

Nor does *Novartis Pharm Corp. v. Teva Pharm. USA, Inc.*, 2009 U.S. Dist. LEXIS 97635, *13 (D.N.J. 2009) support Plaintiffs' argument. In that case, there was disputed evidence as to the terms of the applicable license agreements (the original licenses could not be located). Here, the express terms of Dartmouth's written license agreement are known and not in dispute.

The motivations of other licensees are not relevant for obvious reasons. At heart, a patent plaintiff must show an injury to the exclusive rights it holds under the patent. Whether a licensee holds exclusive rights and whether a court has subject matter jurisdiction cannot vary based on the changing motivations and whims of other licensees. The analysis that ChromaDex invites would allow any non-exclusive licensee to claim "exclusive" rights just by presenting a declaration stating that all other non-exclusive licensees were unwilling to grant licenses. A defendant would be subject potentially to multiple suits by numerous "exclusive" licensees. What happens if one licensee changes its mind? What happens if one settles but others do not? That first settlement would authorize the accused infringer's conduct, mooting the other cases. How can the other licensees' patent rights be "exclusive" when they do not encompass the power to exclude?[5]

Courts applying *WiAV* have properly focused on the scope of the licensee's rights, not on its subjective intent whether to exercise them. For example, in *Hill-Rom Co. v. GE*, 2014 U.S. Dist. LEXIS 108428, *4-6 (E.D. Va. 2014), the patentee corporation, HRS (a plaintiff), had granted licenses to its two sister corporations,

---

[5] Plaintiffs' extensive reliance on ChromaDex's unproven grievances against Elysium in separate lawsuits is telling. Because Plaintiffs cannot show injury to an exclusive patent right under the patent statute, they resort to distraction. But a non-exclusive licensee is not allowed to bring a patent case simply because it alleges that other rights protected under other laws were violated.

HRM and HRC (also plaintiffs), but had retained the right to grant further licenses. Thus, the license on its face did not grant HRM and HRC exclusive rights, because the licensor had the legal right to license others, including an accused infringer. Attempting to overcome this, HRS, HRC, and HRM—just like ChromaDex and Healthspan here—submitted a declaration from in-house counsel asserting that the agreement was in reality exclusive, because the related companies would necessarily act in concert. The declaration stated that "these agreements are in fact exclusive" because "HRS cannot settle litigation without [HRM and HRC's] consent." *Id.* The court rejected this argument, finding that HRM and HRC lacked standing. The court explained that, despite the three companies' professed unwillingness to license the accused infringer, the rights granted by the license established that "HRS… remains free to license other companies to manufacture or sell products embodying the asserted patents." *Id.* This post-*WiAV* decision is on all fours with this case.

     Likewise, in *Copperhead Industrial, Inc. v. Change & Dresser, Inc.*, a licensee and patentee jointly sued for patent infringement. The licensee lacked standing to sue because the patentee "retained the ***ability*** to license the patents-in-suit to a third party." 2019 U.S. Dist. LEXIS 218092, *10 (D. Ala. Dec. 19, 2019) (emphasis added). The patentee's lawsuit, which manifested its clear

*unwillingness* to license the defendant, did not create standing for its co-plaintiff licensee.[6]

### B. Courts Do Not Engage in Veil Piercing in Evaluating Whether a License is Exclusive

Plaintiffs' argument that Healthspan and ChromaDex are not "independently managed entities" and are "run by the same management team" cannot convert non-exclusive patent rights into exclusive rights. Plaintiffs effectively demand that this Court pierce the corporate veil and treat Healthspan and ChromaDex as one. But Plaintiffs do not cite a single case in which a court has employed veil piercing to evaluate standing to sue under the patent statute. By contrast, numerous cases, discussed above and in Elysium's opening brief, hold that a patent plaintiff's alleged exclusivity is destroyed by sharing its rights with affiliated corporations without entertaining a veil-piercing consideration of the affiliates' common control, management or business strategy.[7] *See* D.I. 59 at 14-15.

---

[6] For these reasons, the requirement that Dartmouth consent to sublicenses is irrelevant. Healthspan and Dartmouth together have the right to license Elysium without ChromaDex, and ChromaDex and Dartmouth together have the right to license Elysium without Healthspan. Plaintiffs also conveniently ignore that Dartmouth's consent "shall not be unreasonably withheld." D.I. 50, Ex. D at 2.02.

[7] Even where veil piercing is allowed—and it is not here—Plaintiffs' arguments relying on common control and management of ChromaDex and Healthspan would fall far short. *E.g.*, *Mabon, Nugent Co. v. Texas Am. Energy Corp.*, 1990 Del. Ch. LEXIS 46, *14 (Del Ch. Apr. 12, 1990) ("[U]nder Delaware law, the separate corporate existences of parent and subsidiary will not be set aside merely on a showing of common management of the two entities.").

The separateness of corporate entities is bedrock law. Healthspan is a limited liability company organized under Delaware law. "Delaware courts take the corporate form and corporate formalities very seriously . . . ." and do not abrogate them lightly. *See Culverhouse v. Paulson & Co.*, 133 A.3d 195, 199 (Del. 2016); *see also Mobil Oil Corp. v. Linear Films, Inc.*, 718 F.Supp. 260, 270 (D. Del. 1989) ("Disregard of the corporate entity is appropriate only in exceptional circumstances."). Indeed, in rejecting arguments that a parent company and subsidiary "are really the same company" for standing purposes, the Delaware Court of Chancery observed, "[e]ssentially, [parent company] seems to be trying to pierce its own corporate veil, which would be unusual to say the least…." *Case Fin., Inc. v. Alden*, 2009 Del. Ch. LEXIS 153, *12-13 (Del. Ch. Aug. 21, 2009). As the Third Circuit has explained, "any court must start from the general rule that the corporate entity should be recognized and upheld, unless specific unusual circumstances call for an exception." *Zubik v. Zubik*, 384 F.2d 267, 273 (3rd Cir. 1967). Plaintiffs' argument runs afoul of these principles and should be rejected.

## III. CONCLUSION

For the foregoing reasons, the Court should dismiss ChromaDex, Inc.'s claims for lack of subject matter jurisdiction.

|  |  |
|---|---|
| *Of Counsel:*<br><br>Donald R. Ware<br>dware@foleyhoag.com<br>Jeremy A. Younkin<br>jyounkin@foleyhoag.com<br>Marco J. Quina<br>mquina@foleyhoag.com<br>FOLEY HOAG LLP<br>155 Seaport Boulevard<br>Boston, Massachusetts  02210<br>Phone:  (617) 832-1000<br><br>Dated:  May 26, 2020 | ASHBY & GEDDES<br><br>*/s/ Steven J Balick*<br>_____<br>Steven J. Balick (#2114)<br>Andrew C. Mayo (#5207)<br>500 Delaware Avenue, 8th Floor<br>P.O. Box 1150<br>Wilmington, DE  19899<br>(302) 654-1888<br>sbalick@ashbygeddes.com<br>amayo@ashbygeddes.com<br><br>*Attorneys for Defendant* |

## CERTIFICATE OF COMPLIANCE

This brief complies with the type, font and word limitations set forth in this Court's Standing Order Regarding Briefing in All Cases, dated November 6, 2019. This brief contains 2,487 words (excluding the title page, table of contents, table of authorities, signature block, and certificate of compliance).  This brief has been prepared in 14-point Times New Roman.

Date: May 26, 2020

        ASHBY & GEDDES

        */s/ Steven J. Balick*

        _____
        Steven J. Balick (#2114)
        Andrew C. Mayo (#5207)
        500 Delaware Avenue, 8th Floor
        P.O. Box 1150
        Wilmington, DE  19899
        (302) 654-1888
        sbalick@ashbygeddes.com
        amayo@ashbygeddes.com

        *Attorneys for Defendant*