IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| CHROMADEX, INC. and TRUSTEES OF DARTMOUTH COLLEGE, | ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 18-1434-CFC |
| Plaintiffs, |  |  |
| v. |  |  |
| ELYSIUM HEALTH, INC., |  |  |
| Defendant. |  |  |

**LETTER BRIEF IN SUPPORT OF MOTION FOR LEAVE TO AMEND
INVALIDITY CONTENTIONS**

*Of Counsel:*

Donald R. Ware
dware@foleyhoag.com
Jeremy A. Younkin
jyounkin@foleyhoag.com
Marco J. Quina
mquina@foleyhoag.com
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, Massachusetts  02210
Phone:  (617) 832-1000

Dated:  September 11, 2000

ASHBY & GEDDES
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendant*

{01606514;v1 }

Dear Judge Connolly,

Defendant Elysium Health, Inc. ("Elysium") respectfully seeks leave to amend its invalidity contentions (*see* Scheduling Order, D.I. 40 at ¶ 7) to assert one additional prior art reference. That reference, U.S. Patent No. 5,736,529, is a patent naming Dr. James David Adams as lead inventor (the "Adams patent").

Elysium's request should be a non-controversial example of "recent discovery of material prior art despite earlier diligent search" that this Court identified as good cause for amendment. D.I. 40 at ¶ 7. Elysium conducted two prior art searches through the respected search firm Global Prior Art. It commissioned a search in 2017 for its IPR petition and again early this year when it was preparing Elysium's invalidity contentions in this case.

Despite these search efforts, Elysium first learned of the Adams patent during an interview of Dr. Adams himself this summer, which occurred after the service of Elysium's invalidity contentions on May 29. Elysium reached out to Dr. Adams as a candidate to replace the expert Elysium used in the IPR proceedings, Dr. Joseph Baur. As explained below, Elysium's need to replace Dr. Baur arose because ChromaDex's Chief Scientific Advisor (and named inventor of the two asserted patents), Dr. Charles Brenner, used his professional connections to intimidate Dr. Baur and led Dr. Baur to decide that that he did not wish to participate in this case as a testifying expert.

### I.     Background

#### A.    The Adams Patent

The Adams patent (Ex. A) issued in 1998. It discloses and claims the administration of NAD-related compounds, particularly "nicotinamide ribonucleotide," an NAD precursor closely related to nicotinamide riboside, to treat certain neural conditions. Ex. A at claims 1, 2. The Adams patent's disclosure includes oral compositions containing NAD-related compounds. *Id.* at 5:58-61.

#### B.    Elysium's Diligent Prior Art Searches

Elysium sought institution of IPR proceedings against the patents-in-suit in July 2017. As part of that process, Elysium engaged the well-known search firm, Global Prior Art, to conduct a search for potential prior art. Apparently because the Adams patent refers to nicotinamide "ribonucleotide" rather than nicotinamide "riboside," Global Prior Art did not identify it in that search. Elysium conducted a

second search through Global Prior Art in early 2020 while preparing its invalidity contentions.  This search likewise did not uncover the Adams patent.

### C. Elysium's Search for a Replacement Expert and Subsequent Identification of the Adams Patent

For the IPR proceedings, Elysium had engaged Dr. Joseph Baur, a professor at the University of Pennsylvania, to provide expert testimony.  In the summer of 2019, after Dr. Baur's IPR declaration became public, Dr. Brenner began using social media to denigrate Dr. Baur and to urge that Dr. Bauer be professionally ostracized in the scientific community for his participation as an expert witness for Elysium.  On July 18, 2019, Dr. Brenner tweeted to his 20,000 followers that scientists supporting Elysium's "legal challenges" to the patents "are still going to scientific meetings as though they are decent community members." Ex. B at 3.  On July 19, he tweeted that "scientists… trying to kill IP… can see their way out of this in 1 principled email." *Id.* at 4.  On August 3, he identified Dr. Baur by name in a tweet and suggested that Dr. Baur's decision to testify was financially motivated.  Dr. Brenner also hinted at his own behind-the-scenes efforts to disrupt Elysium's efforts to retain an expert.  He stated:  "Disturbingly, they shopped for scientists to attest that Goldberger 'isolated NR' by making skim milk.  At least 1 terrific scientist I know refused.  But Joseph Baur took the 💰." *Id.* at 5.  The next day, Dr. Brenner explicitly encouraged retribution:  "We should expect ppl like Joseph Baur to correct the record or ppl should stop treating him like he is a member of the scientific community in good standing." *Id.* at 6.

On August 6, 2019, Elysium's counsel, after learning of this conduct of ChromaDex's Chief Scientific Advisor, wrote Plaintiffs' counsel demanding that Dr. Brenner's attempts to undermine the judicial process cease.  Plaintiffs' counsel agreed that Dr. Brenner's conduct was improper and caused him to remove his tweets.  But the damage was done.  When Elysium spoke to Dr. Baur when it was preparing its invalidity contentions this spring, it became clear that Dr. Baur did not wish to serve as a testifying expert in this litigation.  Thereafter, Elysium commenced a search for a new testifying expert.

That process took time, given the pandemic and Dr. Brenner's campaign to pollute the pool of potential experts.  Eventually, Elysium identified Dr. Adams, a highly qualified expert in the field.  In a preliminary interview on June 25, 2020, Dr. Adams brought to counsel's attention his patent, identifying it as potentially relevant prior art.  In a follow-up interview on August 13, 2020, Dr. Adams explained the close relationship between the nicotinamide ribonucleotide of his patent and the nicotinamide riboside of the Brenner patents.  Shortly thereafter,

Elysium sought Plaintiffs' consent to amend Elysium's contentions to add the Adams patent. Plaintiffs refused, and this motion followed.

## II.     Elysium's Motion for Leave to Amend Should Be Granted

The Court's scheduling order permits amendment of contentions on a "timely showing of good cause." D.I. 40 at ¶ 7. The order recites that good cause can include "recent discovery of material prior art despite earlier diligent search." *Id.* This is exactly that situation. The Adams patent is material prior art. It teaches a person skilled in the art that NAD precursor compounds can be orally administered to patients for a therapeutic effect. Ex. A at 5:58-61. Although it does not refer to "nicotinamide riboside" specifically, it refers to a related compound, "nicotinamide ribonucleotide." *Id.* at claim 2. When combined with references (already disclosed in Elysium's contentions) teaching that nicotinamide riboside is another of the NAD precursors, the Adams patent renders the asserted patents invalid as obvious. Elysium conducted diligent prior art searches through Global Prior Art but only later became aware of the Adams patent when it interviewed Dr. Adams as a candidate to replace Dr. Baur.

There is no prejudice to Plaintiffs arising from the addition of a single reference authored by an expert who will testify in this case. Discovery is still in its early stages. No depositions have occurred and the parties are still collecting and producing documents. Expert discovery will not begin until early 2021. There is ample time for Plaintiffs to evaluate one additional prior art reference, about which they learned in August. In addition, Plaintiffs will have the opportunity to depose Dr. Adams. They doubtless will ask him about the subject matter of his patent even if it were not asserted as prior art. Thus, Elysium's assertion of the Adams patent as prior art will not impose any additional discovery burdens.

Finally, Elysium will suffer prejudice if supplementation is denied. Not only will it be prevented from raising a meritorious invalidity defense, ChromaDex will remain free to use the Adams patent itself in its deposition of Dr. Adams. Such an inequitable result would only reward Dr. Brenner's unlawful witness intimidation and worsen the consequences of his misconduct. More generally, it would send the wrong message to litigants who employ extrajudicial scorched-earth tactics against witnesses who testify against them.

For these reasons, Elysium respectfully requests that leave to amend be granted.

            Respectfully,

            */s/ Andrew C. Mayo*

            Andrew C. Mayo (#5207)

ACM/nlm

Attachments

cc:  All Counsel of Record (via electronic mail; w/attachments)