IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHROMADEX, INC. and TRUSTEES OF DARTMOUTH COLLEGE<br><br>Plaintiff,<br><br>v.<br><br>ELYSIUM HEALTH, INC.<br><br>Defendant. | Civil Action No. 18-1434-CFC-JLH |

Adam Poff, Pilar Kraman, YOUNG, CONWAY, STARGATT & TAYLOR LLP, Wilmington, Delaware; James Haley, HALEY GUILIANO LLP, New York, New York; Jason Fowler, COVINGTON & BURLING LLP, Washington, District of Columbia

> *Counsel for Plaintiff ChromaDex, Inc.*

Adam Poff, Pilar Kraman, YOUNG, CONWAY, STARGATT & TAYLOR LLP, Wilmington, Delaware; James Haley, HALEY GUILIANO LLP, New York, New York;

> *Counsel for Plaintiff Trustees of Dartmouth College*

Andrew Mayo, ASHBY & GEDDES P.A., Wilmington, Delaware; Donald Ware, Jeremy Younkin, Marco Quina, Peter Ellis, Urszula Nowak, FOLEY HOAG LLP, Boston, Massachusetts

> *Counsel for Defendant*

**<u>MEMORANDUM OPINION</u>**

December 15, 2020
Wilmington, Delaware

COLM F. CONNOLLY
UNITED STATES DISTRICT JUDGE

Plaintiffs ChromaDex, Inc. and Trustees of Dartmouth College have sued Defendant Elysium Health, Inc. for infringement of two patents. D.I. 1 ¶ 1. Elysium has moved pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss the claims asserted by ChromaDex for lack of subject matter jurisdiction. D.I. 58.

I.

Dartmouth owns both of the asserted patents. In 2012, in what the parties call the Original License Agreement, Dartmouth granted ChromaDex and ChromaDex's subsidiaries an "exclusive" license to (1) "make, have made, use and/or sell" products or processes covered by the asserted patents, (2) sue others who infringed the patents; and (3) grant with Dartmouth's consent sublicenses to third parties to "make, have made, use and sell" products or processes covered by the asserted patents. D.I. 50, Ex. D §§ 1.02, 2.01, 2.02 and 8.01.

On March 12, 2017, ChromaDex's parent company acquired Healthspan Research LLC. Although this acquisition made Healthspan an affiliate and not a subsidiary of ChromaDex, Dartmouth and ChromaDex have said that they "treated" Healthspan as a licensed subsidiary under the Original License Agreement. D.I. 49 at 2.

Dartmouth and ChromaDex filed this lawsuit on September 17, 2018. They accuse Elysium of infringing the asserted patents beginning "no later than July 2017." D.I. 1 ¶ 23.

On September 10, 2019, Dartmouth and ChromaDex executed a so-called Restated License Agreement that "clarif[ied] that ChromaDex's 'Affiliates,' rather than just 'Subsidiaries,' were exclusive licensees to the patents-in-suit." D.I. 49 at 2. The Restated License Agreement was made effective as of March 13, 2017— the day after ChromaDex's parent company acquired Healthspan. D.I. 49 at 2.

Elysium treats the Restated License Agreement as effective as of March 13, 2017 and argues that because the Agreement granted Healthspan the ability to sublicense the asserted patents, ChromaDex was deprived of exclusionary rights in the patents as of that date. D.I. 59 at 4–6. Elysium argues that ChromaDex therefore lacked standing to bring this case in 2018 and this Court lacks subject matter jurisdiction to entertain ChromaDex's infringement claims against Elysium. *Id.* Dartmouth and ChromaDex argue that the Restated License Agreement gave ChromaDex standing as an exclusive licensee to the asserted patents. D.I. 61 at 18–19 (stating that "[t]he Restated Agreement expressly granted ChromaDex and Healthspan 'the right to exclude others from practicing' the Asserted Patents.").

II.

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992). Standing is "an essential and unchanging part" of this case-or-controversy requirement. *Id.* at 560. "Only a party with standing can invoke the jurisdiction of the federal courts." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). When the court's subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff bears the burden of demonstrating standing. *Ortho Pharm. Corp. v. Genetics Inst.*, 52 F.3d 1026, 1032–33 (Fed. Cir. 1995). To meet that burden, the plaintiff must allege a "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984). The personal injury must be "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560 (internal quotation marks and citations omitted).

Patents and the rights they confer are creatures of statute. Section 2 of the Patent Act empowers the United States Patent & Trademark Office (PTO) to grant and issue patents, 35 U.S.C. § 2; and § 154 of the Act provides that every patent issued by the PTO "grant[s] to the patentee, his heirs or assigns . . . the right to exclude others from making, using, offering for sale, or selling [an] invention," 35

3

U.S.C. § 154(a). *See also* 35 U.S.C. § 271 ("[W]hoever without authority makes, uses, offers to sell, or sells any patented invention . . . infringes the patent."). Thus, in a patent infringement case, the actual or threatened injury required by Article III exists solely by virtue of the Patent Act. *See Intell. Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1345 (Fed. Cir. 2001) ("Standing in a patent infringement case is derived from the Patent Act."); *see also WiAV Solutions LLC v. Motorola, Inc.,* 631 F.3d 1257 (Fed. Cir. 2010) ("Because the Patent Act creates the legally protected interests in dispute [in an infringement case], the right to assert infringement of those interests comes from the Act itself."); *see generally Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973) ("Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute.").[1]

---

[1] The right to exclude that accompanies the issuance of a patent pursuant to § 154 is legally distinct from the cause of action created by § 281 of the Patent Act, which provides that "[a] patentee shall have remedy by civil action for infringement of his patent." *See generally Davis v. Passman*, 442 U.S. 228, 239 n.18 (1979) (explaining that a party's standing to sue is a separate question from whether the party has a cause of action). In *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014), the Supreme Court held that "the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the court's statutory or constitutional power to adjudicate the case." In *Lone Star Silicon Innovations LLC v. Nanya Technology Corp.*, 925 F.3d 1225, 1235 (Fed. Cir. 2019), the Federal Circuit held that "*Lexmark* is irreconcilable with our earlier authority treating § 281 as a jurisdictional requirement." Whether a party constitutes a patentee for purposes of § 281 is, at least in theory, a different question than whether a party is a patentee for purposes of § 154 or otherwise has a legally protected interest, the invasion of

4

The language of § 154 appear to be straightforward.  The right that comes with a patent is the right to exclude others from making, using, offering for sale, and selling an invention.  The right is granted to the patentee, his heirs, and his assigns.

But constitutional standing in a patent case is anything but straightforward.  Courts long ago abandoned the text of the statute (and its predecessor statute) and expanded the list of potential grantees of a patent's exclusionary rights beyond the patentee and the patentee's heirs and assigns.  Perhaps most notably, in *Independent Wireless Telegraph Co. v. Radio Corp. of America*, 269 U.S. 459 (1926), the Supreme Court confirmed "the rule" that "an exclusive licensee has a sufficient interest in [a] patent to have standing to sue under Article III of the Constitution."  *Propat Int'l Corp. v. RPost US, Inc.*, 473 F.3d 1187, 1193 (Fed. Cir. 2007).  As often happens when a statute's text is ignored, the case law bred by *Independent Wireless* has led to confusion about the requirements for and the rights that flow from exclusive licensee status.[2]

---

which constitutes the injury required for Article III standing.  There is no natural or common law right to exclude others from practicing a party's invention.  A party alleging infringement has constitutional standing only because of statutory rights.

[2] *See, e.g.*, *Uniloc USA, Inc. v. Apple, Inc.*, No C 18-00358 WHA, 2020 WL 7122617, at *3 (N.D. Cal. Dec. 4, 2020) (noting that "confusion about the interplay between . . . [a plaintiff's] statutory right to sue [in a patent case] and our doctrine of standing has long persisted."); *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, No. CV01-10396 MMM (CWx), 2009 WL 10699035, at *9 (C.D. Cal. July 14, 2009)

In *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538 (Fed. Cir. 1995) (en banc), the Federal Circuit held that "[t]o be an exclusive licensee for standing purposes, a party must have received, not only the right to practice the invention within a given territory, but also the patentee's express or implied promise that *others* shall be excluded from practicing the invention within that territory as well." *Id.* at 1552 (emphasis added). That test left open the question of whether an exclusive licensee must receive from the patentee a promise to exclude *all* others from practicing the invention in the specified territory for the exclusive licensee to have constitutional standing.

In two cases decided after *Rite-Hite* the Federal Circuit appeared to answer yes to that question. In *Mars, Inc. v. Coin Acceptor, Inc.*, 527 F.3d 1359 (Fed. Cir. 2008), the court held that "if the patentee *allows* others to practice the patent in the licensee's territory, the licensee is *not* an exclusive licensee." *Id.* at 1368 (emphasis in original). And in *Textile Productions Inc. v. Mead Corp.*, 134 F.3d 1481 (Fed. Cir. 1998), the court held that "[t]o qualify as an exclusive license, an

---

(noting "confusion [that] arises from the fact that, in the context of standing to sue for patent infringement, the term 'exclusive licensee' can refer to various types of contractual arrangements with different legal effects"); Roger D. Blair & Thomas F. Cotter, *The Elusive Logic of Standing Doctrine in Intellectual Property Law*, 74 Tul. L. Rev. 1323, 1328 (2000) ("[T]he standing rules in [patent] law appear to be as much a patchwork as Dr. Frankenstein's monster, and only marginally more coherent.").

agreement must clearly manifest the patentee's promise to refrain from granting *to anyone else* a license in the area of exclusivity." *Id.* at 1484 (emphasis added); *see also id.* ("[I]f a patentee-licensor is free to grant licenses to others, licensees under that patent are not exclusive licensees."). The court emphasized in *Textile Productions* that the contract at issue—an exclusive requirements contract—did not "confer a right to exclude *all others* from making an invention" and that the patent holder "did not promise that *all others*" shall be excluded from practicing the invention. *Id.* at 1484–85 (emphasis added).

The meaning of "exclusive licensee" endorsed by *Mars* and *Textile Products* is consistent with the general understanding of the term today, *see Exclusive License, Black's Law Dictionary* (11th ed. 2019) (defining an "exclusive license" as "[a] license that gives the licensee the sole right to perform the licensed act, often in a defined territory, and that prohibits the licensor from performing the licensed act and from granting the right to anyone else; esp., such a license of a copyright, patent, or trademark right"); and with the general understanding of the term at the time the Supreme Court decided *Independent Wireless*, *see Exclusive, Black's Law Dictionary* (2d ed. 1910) (defining "exclusive right" as a right "which only the grantee thereof can exercise, and from which all others are prohibited or shut out").

7

But in *WiAV* the Federal Circuit held that *Textile Products*'s and *Mars*'s holdings apply only where "a party [is] an *implied* exclusive licensee of the patents in suit in the absence of a written agreement explicitly granting the party exclusionary rights in the patents." *WiAV*, 631 F.3d at 1266 (emphasis in original). Under *WiAV*, when a contract expressly grants an exclusionary license,

> the key question in determining whether [a plaintiff] has standing to assert the [patents] against the Defendants is not . . . whether [the plaintiff] has established that it has the right to exclude *all* others from practicing the patent. The question is whether [the plaintiff] has shown that it has the right under the patents to exclude *the Defendants* from engaging in the alleged infringing activity and therefore is injured by the Defendants' conduct.

*Id.* at 1267 (emphasis in original).  Applying this test, the court in *WiAV* held that in cases involving an express grant of an exclusive patent license, the "exclusive licensee lacks standing to sue a party who has the ability to obtain such a license from another party with the right to grant it." *Id.* at 1266; *see also id.* at 1266–67 ("[I]f an exclusive licensee has the right to exclude others from practicing a patent, and a party accused of infringement does not possess, and is incapable of obtaining, a license of those rights from any other party, the exclusive licensee's exclusionary right is violated.").

### III.

The parties dispute what the *WiAV* court meant by the phrase "ability to obtain . . . a license from another party with a right to grant it."  Elysium argues

8

that a defendant has the ability to obtain a license from another party if any other party had the legal right to grant the defendant a license.  Dartmouth and ChromaDex argue that a defendant has the ability to obtain a license from another party only if that party had the legal right to grant the defendant a license *and* would have been willing to grant the defendant a license.  It is undisputed that both ChromaDex and Healthspan had the legal right to grant Elysium a license; and I am persuaded by the record evidence submitted by Dartmouth and ChromaDex that Healthspan would likely never have agreed to give Elysium a license to the asserted patents.[3]  Thus, the resolution of the pending motion turns on the meaning

---

[3] Curiously, Dartmouth and ChromaDex never expressly state in their briefing or supporting declarations that Healthspan would not have agreed to give a license to Elysium even though their entire argument is predicated on the assumption that Healthspan would have refused to grant Elysium a license.  At oral argument, ChromaDex's counsel stated that ChromaDex and Healthspan were managed by the same person and that "[t]hat person is not going to allow ChromaDex to license the patents out from under Healthspan and vice-versa." Tr. 39:8–10.  The record establishes that (1) Healthspan and Elysium have been competitors since March 2017, D.I. 62 ¶ 4; (2) ChromaDex and Elysium have been involved in litigation in the Central District of California since 2016 and in the Southern District of New York since 2017, D.I. 61 at 4 n.2; and (3) the same executive management team manages all entities within the ChromaDex corporate family.  The General Counsel and Secretary of ChromaDex and Healthspan, Mark Friedman, stated in a sworn declaration that he believes that "Elysium . . . inten[ds] to destroy the ChromaDex organization, [has] conspired with a key ChromaDex employee to abscond with trade secrets and other confidential information, and attempted to financially ruin the ChromaDex organization . . . ." D.I. 62 ¶ 7.  Friedman intimates, but does not state directly in his declaration, that ChromaDex and Healthspan would never have agreed to grant Elysium a license. *See id.* (stating

of "ability to obtain . . . a license from another party with a right to grant it" in *WiAV*. Although the disputed language by itself lends support to both parties' positions, I think Elysium has the better argument for three reasons.

First, the focus of standing in patent case is on the plaintiff's rights, not the defendant's rights or the defendant's abilities. As the Federal Circuit held in *Morrow v. Microsoft Corp.*, 499 F.3d 1332 (Fed. Cir. 2007), "[i]n determining whether a party holds the exclusionary rights, we determine *the substance of the rights* conferred *on that party* . . . ." *Id.* at 1340 n.7 (emphasis added). *See also Ortho*, 52 F.3d at 1032 ("[I]t is the licensee's beneficial ownership of *a right to prevent others* from making, using or selling the patented technology that provides the foundation for . . . standing." (emphasis added)).

The court emphasized this point in *WiAV*. It stated that "the touchstone of constitutional standing in a patent infringement suit is whether a party can establish that *it has an exclusionary right* in a patent that, if violated by another, would cause *the party holding the exclusionary right* to suffer legal injury." 631 F.3d at 1265 (emphasis added). And the court explained that "the key question" in determining standing is whether the plaintiff "has shown that *it has the right* under the patents to exclude" the defendant from practicing the invention covered by the

---

that "Elysium would not have been able to obtain a license to the Asserted Patents from ChromaDex or Healthspan").

patents. *Id.* at 1267 (emphasis added). A right is "[a] legally enforceable claim that another will do or will not do a given act." *Right*, *Black's Law Dictionary* (11th ed. 2019). A plaintiff does not have the right to prevent a defendant from using a patent if another party has the right to allow the defendant to use the patent.

Second, in answering "the key question" to determine whether the plaintiff in *WiAV* had standing, the court did not consider whether other parties other were willing to license the asserted patents to the defendants. Instead the court examined whether other parties "ha[d] the right to extend [a] license to the Defendants." 631 F.3d at 1267. In the court's words: "the relevant question is whether [another party] can license the Defendants to practice the patents in [the plaintiff's] field of exclusivity." *Id.*

Third, the injury necessary for constitutional standing cannot be "conjectural or hypothetical." *Lujan,* 504 U.S. at 560 (quotation marks and citation omitted). But whether Healthspan would have refused to give Elysium a license in the past is a hypothetical question. Even though it makes sense to me based on the current record that Healthspan would likely have refused to give Elysium a license, that conclusion is ultimately conjecture—an inference formed without proof.

Accordingly, I find that Elysium had "the ability to obtain . . . from another party with the right to grant it" a license to practice the asserted patents, as that phrase is used in *WiAV*. Because Healthspan had the right to give Elysium a

11

license to practice the asserted patents as of May 13, 2017, ChromaDex did not have the right to exclude Elysium from practicing the patents from that date forward. ChromaDex therefore lacks standing to allege that Elysium infringed the asserted patents after that date.

IV.

There remains the issue of whether ChromaDex has standing to allege infringement based on Elysium's actions that occurred before May 13, 2017. The parties did not address this issue in their briefing or at oral argument. Dartmouth and ChromaDex allege that Elysium's infringement began no later than July 2017. Thus, the Complaint allows for possible infringement before the Restated License Agreement took effect.

The Original License Agreement became effective July 13, 2012. Elysium has not suggested that the Original License Agreement did not grant ChromaDex exclusive licensee status for constitutional standing; nor is there anything to suggest that another party had the ability to license Elysium to practice the asserted patents during the term of the Original License Agreement. Accordingly, ChromaDex has standing to allege an infringement claim based on Elysium's conduct occurring between July 13, 2012 and May 12, 2017.

12

V.

For the reasons discussed above, ChromaDex lacks standing to bring a claim for infringement based on Elysium's conduct that occurred on or after May 13, 2017 but has standing to allege a claim based on Elysium's conduct that occurred before that date.  Accordingly, I will grant in part and deny in part Elysium's motion to dismiss.

The Court will issue an Order consistent with this Memorandum Opinion.

13