IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CHROMADEX, INC. and TRUSTEES )
OF DARTMOUTH COLLEGE, )
                                      )
                                      ) **REDACTED PUBLIC VERSION**
            Plaintiffs,    )
                                      ) C.A. No. 18-1434-CFC
v.                              )
                                      )
ELYSIUM HEALTH, INC.,         )
                                      )
            Defendant.    )
                                      )

## ELYSIUM'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT (NO 2.) OF NON-INFRINGEMENT OF CLAIM 2 OF EACH ASSERTED PATENT

*Of Counsel:*

Donald R. Ware
dware@foleyhoag.com
Jeremy A. Younkin
jyounkin@foleyhoag.com
Marco J. Quina
mquina@foleyhoag.com
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, Massachusetts 02210
Phone: (617) 832-1000

Dated: April 27, 2021

ASHBY & GEDDES
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendant*

{01683161;v1}

# TABLE OF CONTENTS

I. Summary of Argument .................................................................................1

II. Background.................................................................................................1

III. Argument ....................................................................................................5

# TABLE OF AUTHORITIES

**Cases**   **Page**

*Akzo Nobel Coatings, Inc. v. Dow Chemical Co.*,
    811 F.3d 1334 (Fed. Cir. 2016) ....................................................................... 5

**Statutes**

35 U.S.C. §112(d) .................................................................................................. 6

I. **Summary of Argument**

The Court should enter summary judgment of noninfringement of each patent's claim 2.[1] There is no material factual dispute about the steps used to manufacture the nicotinamide riboside ("NR") ingredient in the accused product, Basis®. Whether those steps cause Basis to infringe claim 2 of each asserted patent turns on claim construction—a legal issue which must be (and already has been) decided by the Court, not the jury. Under this Court's *Markman* Order, claim 2 of each asserted claim requires that "the nicotinamide riboside is isolated from a natural source or synthetic source ***and is not chemically synthesized***." (D.I. 152, at 2 (emphasis added).) Basis does not infringe claim 2 of either asserted patent because the NR in Basis is chemically synthesized.

II. **Background**[2]

The two asserted patents claim compositions comprising NR. Plaintiffs allege that Elysium's Basis infringes claim 2 of the '086 patent and claims 1-3 of the '807 patent. Basis is a dietary supplement with two active ingredients: NR and pterostilbene.

---

[1] Claim 2 is the only claim asserted in the '086 patent; the PTAB determined in 2019 that all other claims of the '086 patent are invalid as anticipated by prior art.

[2] For the facts material to this motion, see the accompanying Second Statement of Facts ("SF2"). Citations to exhibits ("Ex.") refer to the exhibits attached thereto.

███

SF2-02; SF2-01.

Claim 2 of the '086 patent and claim 2 of the '807 patent both depend from claim 1 of their respective patents. Each adds the further limitation "wherein the nicotinamide riboside is isolated from a natural or synthetic source." In its Claim Construction Order, the Court rejected Plaintiffs' attempt to expand claim 2 to encompass chemically-synthesized NR, construing the limitation to mean "the nicotinamide riboside is isolated from a natural source or synthetic source ***and is not chemically synthesized***." D.I. 152 at 2 (emphasis added). At the *Markman* hearing, this Court twice commented that Plaintiffs' contrary position "borders on frivolous." Ex. C at 33:22, 50:18.

The specification differentiates isolation of NR from a natural or synthetic source from NR "chemically synthesized using established methods." Ex. A at 28:58-63. It cites a paper by Tanimori as exemplifying "chemical synthesis." SF2-03. Scheme 1 of Tanimori ███ employs a three-step process to chemically synthesize NR:

    (1)    formation of NR triacetate (NRA);

    (2)    replacement of the acetate groups in NRA with hydrogen atoms to form NR; and

    (3)    removal of impurities to obtain the synthesized NR product.

SF2-05.  Plaintiffs' chemistry expert admitted in his report that "[t]he syntheses described in Tanimori… include sequences of chemical reactions and purification steps…." Ex. I at ¶ 39.  Plaintiffs' chemistry expert agreed that Tanimori discloses chemical synthesis of NR, and that the chemically-synthesized NR of Tanimori is the result Tanimori obtains after step 3, i.e. after Tanimori has conducted purifications by using chromatography on activated charcoal and by crystallization.  SF2-04; SF2-06.  Plaintiffs' chemistry expert does "not dispute that chemical reactions are often followed by purification steps." Ex. I at ¶ 51.  He agreed that a molecule is still chemically synthesized if "isolated directly from the chemical synthesis." Ex. E at 142.

In its *Markman* ruling, the Court explained that a person of ordinary skill in the art would interpret the specification of the asserted patents as providing "that NR can be obtained in three different ways—from a natural source, from a synthetic source, or from chemical synthesis described in the articles like Tanimori and Franchetti." Ex. C at 48:7-11.  The Court continued:

> The written description also explains how an artisan of ordinary skill would obtain NR that is not chemically synthesized.  Specifically, it explains that, and I quote, "synthetic sources of nicotinamide riboside

can include any library of chemicals commercially available from most large chemical companies."

*Id*. at 48:11-18. As Dartmouth explained in its IPR submissions, claim 1 covers all three sources, including chemical synthesis, but claim 2 is narrower and ***excludes*** chemically-synthesized NR. Ex. J at 13-14. The Court held that Dartmouth "disavowed clearly and unequivocally any constructions to the contrary during the IPRs of two patents." Ex. C at 47:4-6.

Because the NR in Basis is chemically synthesized, Plaintiffs should have stipulated to non-infringement of claim 2 of both patents. Instead, they repackaged their losing claim construction argument as a baseless infringement theory and forced Elysium to devote additional resources to claims that never should have been asserted in the first place. Plaintiffs now argue that the chemically-synthesized NR in Basis is "isolated from a ... synthetic source and is not chemically synthesized" because the NR product ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ Ex. K at Ex.1, pp. 7-10, Ex.2, pp. 4-7. If Plaintiffs' claim construction position "border[ed] on frivolous," its infringement position crosses the line.

In addition to alleging that Elysium's manufacturing process yields NR within the scope of claim 2 of both patents, Plaintiffs argue that a few lots of ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ also infringed. ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* SF2-

07. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

In their supplemental infringement contentions, Plaintiffs assert that the NR ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. K at Ex. 1, pp. 7-10 (emphasis added), Ex. 2, pp. 4-7 (emphasis added).  This contention is mentioned briefly in three paragraphs of Plaintiffs' 135-paragraph opening expert report on infringement.  Ex. H at ¶¶ 92-94.  Neither Plaintiffs' contentions nor their expert report explains how NR could be "isolated from a natural source" and "not chemically synthesized" simply because ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

**III.  Argument**

Assessing infringement is a 2-part inquiry: (1) construing the claims, and (2) comparing the construed claims to the accused product.  *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1338-39 (Fed. Cir. 2016).  Summary judgment of non-infringement is warranted when "after resolving all inferences in favor of the patentee, [the] court… conclude[s] that no reasonable jury could find infringement." *Id.* at 1341.

The basis for entering summary judgment of non-infringement here could not be more straightforward.  There is no material factual dispute about the steps

used to manufacture the NR component of Basis, and no reasonable jury could find that those steps produce NR that "is *not* chemically synthesized" (emphasis added) as required by this Court's claim construction. A jury could find only that the NR in Basis is chemically synthesized and therefore is non-infringing.

There is no dispute that the NR used in Basis is chemically synthesized.



Indeed, claim 1 of the '807 patent, which covers all three sources of NR, already requires that the NR be "isolated," i.e., "separated or substantially free from at least some of the other components associated with the source." D.I. 152. If merely ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮—causing it to be "isolated" within the meaning of claim 1—means that the NR is also "isolated from a synthetic source" and "not chemically synthesized," then NR that meets the limitations of claim 1 also meets the limitations of claim 2, and the scope of the two claims is identical. *See* 35 U.S.C. § 112(d) (dependent claims must further limit the subject matter claimed).

If Elysium's process is

not chemical synthesis, then the exclusion of chemical synthesis from the scope of the claim 2's is meaningless.

The flaw in Plaintiffs' argument is clear from the specification. As the Court noted in its claim construction ruling, the specification recognizes that NR can be obtained "from chemical synthesis described in the articles like Tanimori…." Ex. C at 48:7-11. It is undisputed that Tanimori describes chemical synthesis of NR as a multi-step process that begins with forming NR triacetate salt, followed by replacing its acetate groups with hydrogen atoms to form NR salt, which then undergoes clean-up steps to remove impurities and obtain the synthesized NR product. SF2-04; SF2-05. Plaintiffs' chemistry expert acknowledged that "[t]he syntheses described in Tanimori… include sequences of chemical reactions and purification steps…." Ex. I at ¶ 39. In short, to exemplify the "chemically synthesized" NR it excluded from claim 2, Dartmouth described a multi-step process that ends with purification steps, differentiating such "chemical synthesis" of NR from NR isolated from a natural or synthetic source.

Plaintiffs should not be permitted to reargue claim construction in the guise of a purported jury question on infringement. This Court has *already* rejected Plaintiffs' theory that the NR in Basis is "isolated from a synthetic source" within the meaning of claim 2 merely because the process includes ███████████ ███████████████████████████████████████ The same was true in

Tanimori. The Court found that Plaintiffs' argument "borders on being frivolous." Ex. C at 50:14-18; *see also id.* at 36:11-20 (explaining Court's reading of specification that with chemical synthesis "you are creating a synthetic source, but it's anticipated that at the last step you're going to have some isolation").

Finally, there is no merit to Plaintiffs' argument that ▮▮▮▮▮ were "isolated from a natural source" and were "not chemically synthesized." ▮▮▮▮▮ SF2-07. In his deposition, Plaintiffs' expert admitted that he did not know ▮▮▮▮▮ SF2-08. ▮▮▮▮▮ SF2-09. The Court should enter summary judgment of noninfringement of claim 2 of both patents.

| | |
|---|---|
| *Of Counsel:* | ASHBY & GEDDES |
| Donald R. Ware<br>dware@foleyhoag.com<br>Jeremy A. Younkin<br>jyounkin@foleyhoag.com<br>Marco J. Quina<br>mquina@foleyhoag.com<br>FOLEY HOAG LLP<br>155 Seaport Boulevard<br>Boston, Massachusetts 02210<br>Phone: (617) 832-1000<br><br>Dated: April 27, 2021 | /s/ Andrew C. Mayo<br><br>Steven J. Balick (#2114)<br>Andrew C. Mayo (#5207)<br>500 Delaware Avenue, 8th Floor<br>P.O. Box 1150<br>Wilmington, DE 19899<br>(302) 654-1888<br>sbalick@ashbygeddes.com<br>amayo@ashbygeddes.com<br><br>*Attorneys for Defendant* |

## CERTIFICATE OF COMPLIANCE

This brief complies with the type, font and word limitations set forth in this Court's Standing Order Regarding Briefing in All Cases, dated November 6, 2019. This brief contains 1787 words (excluding the title page, table of contents, table of authorities, signature block, and certificate of compliance). This brief has been prepared in 14-point Times New Roman font.

Date: April 27, 2021

ASHBY & GEDDES

/s/ Andrew C. Mayo
_____
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendant*

{01683161;v1 }

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of April, 2021, the attached **ELYSIUM'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT (NO 2.) OF NON-INFRINGEMENT OF CLAIM 2 OF EACH ASSERTED PATENT** was served upon the below-named counsel of record at the address and in the manner indicated:

Adam W. Poff, Esquire            VIA ELECTRONIC MAIL
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801

Christopher N. Sipes, Esquire         VIA ELECTRONIC MAIL
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001

James F. Haley, Jr., Esquire          VIA ELECTRONIC MAIL
HALEY GUILIANO LLP
75 Broad Street, Suite 1000
New York, NY 10004

/s/ Andrew C. Mayo

Andrew C. Mayo

{01683161;v1 }