THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHROMADEX, INC. and TRUSTEES OF DARTMOUTH COLLEGE,<br><br>Plaintiffs,<br><br>v.<br><br>ELYSIUM HEALTH, INC.,<br><br>Defendant. | **REDACTED PUBLIC VERSION**<br><br>C.A. No. 18-1434-CFC |

**ELYSIUM HEALTH'S OPENING BRIEF IN SUPPORT OF ITS *DAUBERT* MOTION (NO. 1) TO EXCLUDE OPINIONS OF ROBERT W. SOBOL AND ROBERT D. LARSEN THAT ARE INCONSISTENT WITH THE CLAIMS AS CONSTRUED**

*Of Counsel:*

Donald R. Ware
dware@foleyhoag.com
Jeremy A. Younkin
jyounkin@foleyhoag.com
Marco J. Quina
mquina@foleyhoag.com
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, Massachusetts 02210
Phone: (617) 832-1000

Dated: April 27, 2021

ASHBY & GEDDES
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendant*

{01683238;v1 }

# TABLE OF CONTENTS

I.  Summary of Argument ...................................................................................1

II. Argument .......................................................................................................1

   A.  Dr. Sobol's Opinions Are Contrary to the Court's Claim Construction..........2

   B.  Dr. Larsen's Opinion Are Contrary to the Court's Claim Construction..........9

# TABLE OF AUTHORITIES

**Cases**                                                                                                                   **Page**

*Cook Inc. v. Endologix, Inc.*,
  2012 U.S. Dist. LEXIS 126652 (S.D. Ind. Sept. 6, 2012) ............................ 1, 6

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) .................................................................................... 1

*Liquid Dynamics Corp. v. Vaughan Co.*,
  449 F.3d 1209 (Fed. Cir. 2006) .................................................................. 1

*Personalized User Model, L.L.P. v. Google Inc.*,
  2014 U.S. Dist. LEXIS 25356 (D. Del. Feb. 27, 2014) ................................ 1

I.     **Summary of Argument**

Plaintiffs rely on expert opinions of Drs. Robert W. Sobol and Robert D. Larsen to defend the validity of the asserted patents. But their opinions depend on interpretations of the asserted claims that do not follow—and fundamentally reject—this Court's Claim Construction Order. Under *Daubert*, Plaintiffs should not be allowed to confuse the jury with unreliable and unhelpful opinions. The jury must decide infringement and invalidity under the claims as construed by the Court.

II.    **Argument**

An expert's testimony should be excluded if it does not rest on "a reliable foundation" or is not "relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597-98 (1993). "[E]xpert testimony inconsistent with the Court's claim construction is unreliable and unhelpful to the trier of fact" and must be excluded. *Personalized User Model, L.L.P. v. Google Inc.*, 2014 U.S. Dist. LEXIS 25356, at *4-5 (D. Del. Feb. 27, 2014); *see also Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006) (expert testimony properly excluded "because it was based on an impermissible claim construction"); *Cook Inc. v. Endologix, Inc.*, 2012 U.S. Dist. LEXIS 126652, at *10 (S.D. Ind. Sept. 6, 2012) (expert testimony that conflicts with court's claim construction is "unhelpful and confusing to the jury").

### A. Dr. Sobol's Opinions Are Contrary to the Court's Claim Construction

The opinions expressed in Dr. Sobol's invalidity rebuttal report rely on claim interpretations that flout this Court's *Markman* Order (D.I. 152). Plaintiffs must not be permitted to defend the validity of the patents by urging the jury to interpret the claims inconsistently with the Court's Order.

***Section 101 Rebuttal Opinion***. To defend the patentability of claims directed to products of nature, Dr. Sobol assumes claim limitations not found in the claim language or the *Markman* Order. Specifically, Dr. Sobol states:

> The Asserted Claims are directed to compositions that include isolated NR *in quantities far beyond that found in nature*, formulated for oral administration to increase NAD+ biosynthesis *with a surety and in an amount far beyond that which can be achieved from naturally occurring NR*, such as by consumption of natural sources like milk.

Ex. A at ¶ 142 (emphases added).[1] When pressed in his deposition about the source of these requirements, Dr. Sobol admitted that "those words are not in the claim construction or claims. That was my presentation of—that was in my report, not in the claims as written." Ex. B at 240-241. Dr. Sobol is not permitted to contradict this Court's construction.

*First*, the plain language of the claims imposes no quantity requirement on the amount NR in the claimed composition, and nothing in this Court's *Markman*

---

[1] This interpretation of the claims is echoed in other paragraphs of Dr. Sobol's report. *See, e.g.*, Ex. A at ¶¶ 150, 154, 157-160, 166, 168-69.

Order requires the NR in the claimed compositions be "in quantities far beyond that found in nature." During claim construction, Plaintiffs proposed construing "isolated nicotinamide riboside" as requiring that NR make up at least 25% of the composition. D.I. 99 at 22. When the Court declined to accept this argument, Plaintiffs withdrew it and *stipulated* to a construction that required no threshold amount or concentration of NR, as memorialized in this Court's Claim Construction Order. Ex. C at 29; D.I. 152. Dr. Sobol, when pressed, admitted that the claims "don't speak to a threshold amount, no." Ex. B at 199.

*Second*, contrary to Dr. Sobel's opinion, the claims as construed do not require that the NR in the claimed compositions increase NAD+ biosynthesis "with a surety and in an amount far beyond that which can be achieved from naturally occurring NR." The asserted claim of the '086 patent contains *no* limitation regarding NAD+ biosynthesis, and the claims of the '807 patent contain no "surety" or amount limitations. In their *Markman* briefing, Plaintiffs never suggested "surety" or "amount" requirements for the claimed increase in NAD+ biosynthesis. Instead, contrary to Dr. Sobol's § 101 opinion, Plaintiffs stated, "[d]etermining whether this claim limitation is satisfied is straightforward: does oral administration of the claimed composition increase NAD+ biosynthesis, or not?" D.I. 99 at 89-90.

The Court's construction of this claim term says nothing about the "surety" of the increase, nor does it require any specific amount of increase, as Dr. Sobol eventually conceded during his deposition. Ex. B at 239, 240-241. Instead, the Court construed the term to require that the composition "increases NAD+ biosynthesis upon oral administration to an animal relative to the level of NAD+ biosynthesis if the composition were not administered to an animal." D.I. 152 at 2. This does not require that there be sufficient NR to provide "surety," or that the increase NAD+ biosynthesis be in an "amount far beyond that which can be achieved" through naturally-occurring NR.

In addition, contrary to Dr. Sobol's mistaken opinion, the claims of the '807 patent do not require that the *isolated NR* in the claimed composition increase NAD+ biosynthesis at all. Rather, they require that the *composition* (which comprises NR in combination with tryptophan, nicotinic acid, or nicotinamide) increase NAD+ biosynthesis. Plaintiffs acknowledged this in their claim construction briefing: "Claim 1 recites that the claimed 'composition'—not any one of its particular components—'increases NAD+ biosynthesis upon oral administration.'" D.I. 99 at 93. In his deposition, Dr. Sobol admitted that in the claims it is the composition, not the NR, that must increase NAD+ biosynthesis. Ex. B at 204-205. Dr. Sobol's opinions rest on the opposite assumption, contrary to the plain language of the claims and this Court's *Markman* Order.

Dr. Sobol's improper constructions infect the entirety of his opinions on Section 101. The core of his argument is that the claims are patentable because, he asserts, they require NR in amounts beyond the amounts in natural compositions and sufficient to increase NAD+ biosynthesis beyond any increase provided by natural compositions. Ex. A at 60-74. Thus, Dr. Sobol's opinion on patent-eligibility under Section 101 must be excluded as unreliable and unhelpful.

***Section 102 Rebuttal Opinion***. Elysium asserts that the Goldberger prior art references (describing administration of skim milk and buttermilk to prevent or treat NAD+ deficiency diseases),[2] as well as skim milk, which comprises isolated NR and was being used and sold long before the '807 patent's priority date, render that patent invalid as anticipated. Dr. Sobol's rebuttal opinion also defies this Court's *Markman* Order.

*First*, Dr. Sobol asserts that the NR in skim milk and buttermilk is not "isolated" NR as required by the '807 claims. This opinion requires him to re-write the claims to include requirements specifying the amount or purity of NR in the claimed composition. Dr. Sobol expresses this non-existent limitation in a variety of ways, including by opining that "a ***small concentration*** of NR is not

---

[2] *See* Ex. D, Joseph Goldberger et al., "A Study of the Blacktongue-Preventative Action of 16 Foodstuffs, with Special Reference to the Identity of Blacktongue of Dogs and Pellagra of Man," *Public Health Reports*, 43(23):1385-1454 (1928); Ex. E, Joseph Goldberger and W.F. Tanner, "A Study of the Treatment and Prevention of Pellagra," *Public Health Reports*, 39(3):87-107 (1924).

isolated NR." Ex. A at ¶ 280.  He also opines that the NR in skim milk and buttermilk is not "isolated" because:

- the removal of fat from whole milk to produce skim milk and buttermilk "does not result in an ***appreciable increase in the concentration or purity*** of the NR";

- NR in skim milk is "less concentrated than the ***minimum 25%*** w/w suggested by" the patent; and

- NR in skim milk and buttermilk does not make up "***at least 0.1%***" of the composition.

Ex. A, at ¶¶ 280-83, 289-95 (emphases added); *see also id*. at ¶¶ 304-305; 313-315, 321-327, 337-38, 345-348, 368-69.

As explained above, however, the court ***rejected*** Plaintiffs' argument that the claims require a threshold amount or concentration of NR.  Plaintiffs cannot ignore the Court's order and reassert their losing claim construction positions via expert opinion to avoid the prior art.  The testimony is unhelpful, unreliable, violates the *Markman* order, and must be excluded.  *See Cook*, 2012 U.S. Dist. LEXIS 126652, at *10 (excluding expert where party "did not succeed with its argument at claim construction and cannot seek to reargue its point at trial through expert testimony").

Similarly, Dr. Sobol argues that skim milk and buttermilk do not comprise "isolated NR" because they contain "many other components" in addition to NR. A at ¶¶ 282-83, 315-16, 348.  However, the Court's construction of "isolated NR"

only requires the NR to be "separated or substantially free from *at least some* of the other components associated with the source" of the NR. D.I. 152. It thus expressly permits other components of the source to remain in the isolated NR.

*Second*, Dr. Sobol opines that the NR in prior art skim milk and buttermilk is not "isolated" because the *nicotinamide riboside* in those products "have not been proven to increase NAD+ biosynthesis upon oral administration." Ex. A at ¶¶ 296, 328, 360; *see also id*. at 297-302, 304-305, 328-334, 337-38, 360-366, 368-69. But as explained above, the '807 claims do not require that the *NR* increase NAD+ biosynthesis; they require that the *composition* do so. Dr. Sobol's opinion again contradicts the claims as construed and must be excluded.[3]

**Section 112 Rebuttal Opinion.** Dr. Sobol's rebuttal opinion on enablement and written description assumes a claim construction that contradicts this Court's order construing "nicotinamide riboside." The Court construed that term to mean: "nicotinamide riboside or a derivative (e.g., L-valine or L-phenylalanine esters) of nicotinamide riboside." D.I. 152. Over Plaintiffs' objection, the Court ruled that derivatives of NR are *included* within the claim scope, and that L-valine and L-phenylalanine esters are *examples* of such derivatives. At the claim construction hearing, the Court explained that the applicant acted as his own lexicographer

---

[3] In particular, the Court should exclude the opinions set forth in sections IX.B.1, IX.B.2, and IX.B.3 of Dr. Sobol's report. Ex. A at 113-149.

"when he stated that, 'nicotinamide riboside can be a derivative, *for example*, L-valine or L-phenylalanine esters of nicotinamide riboside,' and that is at column 28, lines 63 through 65." Ex. C at 22-23 (emphasis added); *see also id*. at 25.

Ignoring this ruling, Dr. Sobol re-writes the Court's construction as:

> **nicotinamide riboside or a ~~derivative (e.g., L-valine or L-phenylalanine esters)~~ salt or ester of nicotinamide riboside**

Specifically, Dr. Sobol opines that "a POSA would understand this phrase [*i.e.*, "a derivative (e.g., L-valine or L-phenylalanine esters) of nicotinamide riboside"] to reference salts and esters of NR." Ex. A at ¶ 988. The Court's claim construction is not limited to salts or esters of NR. Indeed, in their *Markman* brief, Plaintiffs argued, in the alternative, that if the term nicotinamide riboside were construed to include derivatives, it should be limited to specific derivatives—i.e., salts—of NR. D.I. 99 at 11, n.5. The Court rejected that argument. Plaintiffs should not be permitted to sidestep the Court's ruling by offering expert testimony that contradicts it.

Dr. Sobol's refusal to abide by this Court's construction of "nicotinamide riboside" permeates his enablement and written description opinion. In nearly every paragraph of his opinion on these issues, Dr. Sobol asserts that the claims are limited to a subset of esters and salts. *See* Ex. A at ¶¶ 987-1050. Because his opinions rest on an incorrect claim construction, they must be excluded.

### B. Dr. Larsen's Opinion Are Contrary to the Court's Claim Construction

In response to Elysium's expert opinion on the invalidity of the asserted claims under §112, Plaintiffs submitted a second expert rebuttal report from a new expert, Dr. Larsen, who also addressed to the meaning of the claim term "nicotinamide riboside." Ex. F at ¶¶ 25-42. Echoing Dr. Sobol's opinion, discussed above, Dr. Larsen purports to construe the Court's construction of the term to mean: "salts and/or esters of nicotinamide riboside that are understood to routinely and predictably deliver nicotinamide riboside, either through dissolution or by esterase-catalyzed hydrolysis, following organization." *Id*. at ¶ 25.

This opinion is unreliable and unhelpful for the same reasons as Dr. Sobol's opinion: the Court did not limit derivatives of NR to salts and ester derivatives. Dr. Larson's opinion likewise must be excluded.

*Of Counsel:*

Donald R. Ware
dware@foleyhoag.com
Jeremy A. Younkin
jyounkin@foleyhoag.com
Marco J. Quina
mquina@foleyhoag.com
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, Massachusetts  02210
Phone:  (617) 832-1000

Dated:  April 27, 2021

ASHBY & GEDDES

*/s/ Andrew C. Mayo*

_____
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendant*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type, font and word limitations set forth in this Court's Standing Order Regarding Briefing in All Cases, dated November 6, 2019. This brief contains 2033 words (excluding the title page, table of contents, table of authorities, signature block, and certificate of compliance). This brief has been prepared in 14-point Times New Roman font.

Date: April 27, 2021

ASHBY & GEDDES

*/s/ Andrew C. Mayo*

_____
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendant*

{01683238;v1 }