**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CHROMADEX, INC. and TRUSTEES OF DARTMOUTH COLLEGE, <br><br> Plaintiffs, <br><br> v. <br><br> ELYSIUM HEALTH, INC., <br><br> Defendant. | REDACTED - PUBLIC VERSION (Filed May 4, 2021) <br><br> C.A. No. 18-1434-CFC <br><br>  |

**PLAINTIFFS' OPENING BRIEF IN SUPPORT OF**
***DAUBERT* MOTION TO EXCLUDE TESTIMONY OF**
**ELYSIUM'S DAMAGES EXPERT ALEXANDER CLEMONS**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................... ii

TABLE OF EXHIBITS .......................................................................... iii

TABLE OF ABBREVIATIONS ............................................................. iv

STATEMENT OF FACTS ...................................................................... 2

LEGAL STANDARD ............................................................................. 4

ARGUMENT ......................................................................................... 4

    I.     Mr. Clemons Is Unqualified to Offer Opinions on
           Technological Comparability of the Cornell and Mayo
           Licenses, But Does So Anyway. ......................................... 5

    II.    Mr. Clemons' Methodology for Determining the Royalty Rate
           Is Unreliable. ...................................................................... 6

    III.   Mr. Clemons Impermissibly Treats a Single License As
           Establishing a Royalty for The Dartmouth Patents. ........... 8

CONCLUSION ...................................................................................... 9

WORD COUNT CERTIFICATION ..................................................... 12

CERTIFICATE OF SERVICE ............................................................. 13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*CSIRO v. Cisco Sys., Inc.*,
   809 F.3d 1286 (Fed. Cir. 2014) ............................................................4

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993)......................................................................4, 11

*Schneider ex rel. Estate of Schneider v. Fried*,
   320 F.3d 396 (3d Cir. 2003) .................................................................4

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
   318 F. Supp. 1116 (S.D.N.Y. 1970) ...........................................1, 7, 8

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999)..............................................................................4

*Trell v. Marlee Electronics Corp.*,
   912 F.2d 1443 (Fed. Cir. 1990) ............................................................8

*Whitserve, LLC v. Computer Packages, Inc.*,
   694 F.3d 10 (Fed. Cir. 2012) ................................................................8

*Wordtech Sys., Inc. v. Integrated Networks Soln's, Inc.*,
   609 F.3d 1308 (Fed. Cir. 2010) ...........................................................7

**Other Authorities**

Fed. R. Evid. 702 .............................................................................4, 5

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---|---|
| Exhibit 1 | Expert Report of Alexander L. Clemons, dated March 9, 2021. |
| Exhibit 2 | Excerpts from the Transcript of the Deposition of Alexander Clemons, taken April 6, 2021. |

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| ChromaDex | Plaintiff ChromaDex, Inc. |
| Clemons Dep. | Transcript of the Deposition of Alexander L. Clemons, taken April 6, 2021 (Exhibit 2). |
| Clemons Report | Expert Report of Alexander L. Clemons, dated March 9, 2021 (Exhibit 1). |
| Cornell License | License Agreement between ChromaDex Corporation and Cornell University, effective July 5, 2011 |
| Dartmouth | Plaintiff Trustees of Dartmouth College |
| Dartmouth-ChromaDex License | Exclusive License Agreement between Dartmouth and ChromaDex, effective July 13, 2012, as amended. |
| The Dartmouth Patents | U.S. Patent Nos. 8,383,086 and 8,197,807 |
| Mayo License | Patent License Agreement between Mayo Foundation for Medical Education and Research, Harvard College, and Elysium Health, Inc., dated August 9, 2018 |
| Plaintiffs | Collectively Plaintiffs ChromaDex, Inc. and Trustees of Dartmouth College |
| Elysium | Defendant Elysium Health, Inc. |

Elysium's damages expert Mr. Alexander Clemons is, by his own admission, not qualified to offer technical opinions in this case. And yet, he does just that by stating that two of the license agreements in this case, the Cornell-ChromaDex License and the Mayo-Elysium License are "less technically comparable" than the Dartmouth-ChromaDex License. He offered such opinions without consulting any technical experts, or even examining the licensed patents, because in his view he had "no reason" to do so. Mr. Clemons should not be permitted to offer opinions that he is admittedly unqualified to offer and that lack any foundation from another expert.

Also, Mr. Clemons' methodology for determining a reasonable royalty rate for a license to the Dartmouth Patents is flawed and unreliable. First, Mr. Clemons discounts every license agreement in this case other than the Dartmouth-ChromaDex License on the sole basis that the other license agreements do not cover the Dartmouth Patents. Mr. Clemons' belief that he need not credit other license agreements on this basis alone runs afoul of *Georgia-Pacific*, which directs courts to consider the defendant's "other" licenses to "comparable" patents. Second, Mr. Clemons' cursory analysis of the "other" licenses contradicts Federal Circuit precedent requiring an accounting of the technological and economic differences between a license to the Dartmouth Patents and other relevant licenses. Third, Mr. Clemons has effectively treated the Dartmouth-ChromaDex License as an established royalty, in contravention of precedent stating that one agreement cannot,

without more, set an established royalty. Accordingly, Mr. Clemons' reasonable royalty rate opinions should be excluded.

## STATEMENT OF FACTS

Elysium served a rebuttal expert report from Mr. Clemons on March 9, 2021 in which he opined on a reasonable royalty for Elysium's infringement of the Dartmouth Patents in this case. Ex. 1 ("Clemons Report"). Mr. Clemons' analysis effectively relies on one license agreement: the Exclusive License Agreement between Dartmouth and ChromaDex, effective July 13, 2012, as amended (the "Dartmouth-ChromaDex License"). *Id.* at 27-38, 44-45. The Dartmouth-ChromaDex License included a license to the Dartmouth Patents and specified a 3% royalty rate for products in a licensed field, including "dietary supplements." *See id.* at 27-28 (discussing license agreement). Mr. Clemons analyzes the 2012 Dartmouth-ChromaDex agreement as well as the alleged "course of conduct" of the parties to conclude that Dartmouth would purportedly have accepted a royalty rate as low as 0.86% from Elysium for a license to the Dartmouth Patents in 2017, almost 3.5 times *lower* than the rate at which Dartmouth actually licensed the patents to ChromaDex in 2012. *Id.* at 27-38, 44-45.

In contrast to the lengthy analysis of the Dartmouth-ChromaDex License, Mr. Clemons largely ignores the other license agreements in the record, including an agreement entered into by Elysium covering the accused Basis product. Clemons

2

Report at 38-42. In particular, Mr. Clemons briefly discusses in a few short paragraphs two of the parties' own license agreements that do not involve the Dartmouth Patents: (1) the 2011 Cornell-ChromaDex agreement (the "Cornell License") and (2) the 2018 Mayo-Elysium agreement (the "Mayo License"). *Id.* at 40-42. For both of these agreements, although Plaintiffs' expert Mr. Gunderson analyzed them in detail and consulted with technical experts about the comparability of the licensed patents to the Dartmouth Patents, Mr. Clemons does not conduct any similar analysis. Instead, Mr. Clemons states that he "does not offer any technical opinions," but nonetheless concludes that both agreements are "less technically comparable than the Dartmouth/ChromaDex license as the Dartmouth/ChromaDex license include a license for the actual Patent-in-Suit themselves." *Id.*

Mr. Clemons admits that he is not qualified to offer technical opinions, and further that he did not discuss the patents included in these two licenses with Elysium's technical expert, Dr. Adams. Ex. 2 ("Clemons Dep.") at 204:18-205:20, 223:7-18. Despite this, Mr. Clemons opines that these agreements are "less relevant" than the Dartmouth-ChromaDex Licenses on the sole basis of the licensed patents not being the Dartmouth Patents. *See, e.g.*, *id.* at 205:8-11, 213:6-15, 223:2-6. Indeed, Mr. Clemons testified in his deposition that there was "no reason" to look at the other licensed patents, or further examine the licenses themselves, because

3

"those assets are not the same" as the Dartmouth Patents. *Id.* 213:20-214:16; 220:5-221:5.

## LEGAL STANDARD

The proponent of expert testimony must show by a preponderance of the evidence that (i) the expert is qualified, (ii) the testimony is reliable, and (iii) the testimony is relevant and will assist the jury. Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-95 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-52 (1999). The Third Circuit has interpreted these requirements to mean that the Court is obligated to consider a 'trilogy of restrictions' before admitting expert testimony: qualification, reliability, and fit. *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404-05 (3d Cir. 2003). In the context of patent damages, the Federal Circuit has held that "given the great financial incentive parties have to exploit the inherent imprecision in patent valuation, courts must be proactive to ensure that the testimony presented—using whatever methodology—is sufficiently reliable." *CSIRO v. Cisco Sys., Inc.*, 809 F.3d 1286, 1301 (Fed. Cir. 2014).

## ARGUMENT

Mr. Clemons is not a technical expert, and not qualified to offer his opinions regarding technical comparability of various license agreements. Beyond this, Mr. Clemons' methodology for determining a reasonable royalty is unreliable because

he relies solely on the Dartmouth-ChromaDex License and fails to meaningfully consider any other license agreement in violation of Federal Circuit precedent. Mr. Clemons has inappropriately treated a single license agreement as establishing a set royalty for the Dartmouth Patents, again in violation of Federal Circuit precedent. Mr. Clemons' reasonable royalty opinions should therefore be excluded.

## I.     Mr. Clemons Is Unqualified to Offer Opinions on Technological Comparability of the Cornell and Mayo Licenses, But Does So Anyway.

Mr. Clemons freely admits that he is not a technical expert. *See, e.g.*, Clemons Dep. at 216:1-19 ("I'm not a technical expert…"), 223:7-12 ("Again I'm not a technical expert …."). He also admits that he did not consult with any technical experts about the patents licensed under the Cornell or Mayo licenses. *Id.* at 216:20-217:24, 223:13-18. Yet, in his report, Mr. Clemons states that both of these agreements are "less technically comparable than the Dartmouth/ChromaDex License" and thus the entire licenses are "less comparable." Clemons Report at 40-41. Seemingly acknowledging his unfounded opinions, in deposition he denied having opinions on technical comparability. Clemons Dep. at 216:1-19 ("…I don't have an opinion on the technical comparability of the license."), 223:7-12 ("… I do not have an opinion on whether those patents are technically comparable to the patents-in-suit."). But that does not change the opinions stated in his report. Having admitted he is not a technical expert, and thus not qualified to offer opinions on

technological comparability, he should not be permitted to testify that the Cornell and Mayo licenses are "less technically comparable." Fed. R. Evid. 702.

## II.   Mr. Clemons' Methodology for Determining the Royalty Rate Is Unreliable.

In addition Mr. Clemons' methodology for applying the Cornell and Mayo licenses in his royalty rate opinion is unreliable and contradicts long-established precedent. Mr. Clemons' methodology for comparing licenses to the hypothetical license to the Dartmouth Patents was a mere binary choice: does the license being considered include the Dartmouth Patents? Indeed, Mr. Clemons asserted at deposition that there was "no reason" to even look at the Cornell and Mayo licenses because they did not involve the Dartmouth Patents:

> Q     How did the Harvard/Mayo license impact your damages opinion? In what ways?
>
> A     So as we discussed, it doesn't change the number of my -- in my final opinion because I don't find it to be as relevant as the Dartmouth/ChromaDex license. I looked at it, I considered it. It's factored into my analysis the same way everything that I looked at and considered was.
>         But when I look at that and I also look at the 2012 Dartmouth/ChromaDex license, that license has my answer. The course of conduct under that license has my answer.
>         So given how much more relevant that is, how much more probative it is, the fact that you can't really get more technically comparable or more technically relevant than the actual patents in issue, that's where I find my answer. So *there's no reason to go looking at something else.* …

Clemons Dep. at 213:20-214:12 (emphasis added).

Mr. Clemons' belief that he can automatically discount licenses for "no reason" other than the fact that the license does not involve the Dartmouth Patents violates *Georgia-Pacific* and renders his entire reasonable royalty opinion unreliable.

The *Georgia-Pacific* case lays out a long-accepted framework that imagines a hypothetical negotiation for a license to the patents-in-suit to determine reasonable royalty damages. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). The hypothetical negotiation in *Georgia-Pacific* centers on fifteen evidentiary "factors," one of which, Factor 2, examines the "rates paid by the licensee for the use of other patents comparable to the patent-in-suit." *Id.* Similarly, Factor 12 is "the portion of the profit or the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions." *Id.* By definition, rates paid for the use of "other patents" or "analogous inventions" are not rates paid for a license to the patents in suit. That is why, when considering licenses under these factors, experts "must account for the technological and economic differences" between other licenses and a license to the Dartmouth Patents. *Wordtech Sys., Inc. v. Integrated Networks Soln's, Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010). Mr. Clemons' assertion that he had "no reason" to consider technical comparability thus directly violates *Georgia-Pacific* and Federal Circuit precedent on damages.

While Mr. Clemons professes to have generally "considered" both the Cornell and Mayo license agreements under *Georgia-Pacific* Factors 2 and 12, he did so without the required analysis of technical and economic comparability with the sole justification being that the licenses did not involve the Dartmouth Patents. As the Federal Circuit has held, experts may not simply recite the various *Georgia-Pacific* factors and provide such cursory analysis, they must "*fully* analyz[e] the *applicable* factors." *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 31 (Fed. Cir. 2012). Despite claiming to do so, Mr. Clemons did not "fully analyze" the *Georgia-Pacific* Factors 2 and 12 out of a misguided belief that he did not need to do so.

## III. Mr. Clemons Impermissibly Treats a Single License As Establishing a Royalty for The Dartmouth Patents.

In essence, Mr. Clemons believes that the Dartmouth-ChromaDex License alone sets an established royalty for the Dartmouth Patents such that there is "no reason" to look at any other license. While Mr. Clemons denies that he has used an established royalty, (Clemons Dep. at 206:14-207:2), his testimony that he had "no reason" to look at other agreements reveals that he did just that. Indeed, when asked about what impact the Mayo license had on his royalty opinion, Mr. Clemons referred back to the Dartmouth-ChromaDex License. *Id.* at 213:20-214:16. However, "[a] single licensing agreement, without more, is insufficient proof of an established royalty." *Trell v. Marlee Electronics Corp.*, 912 F.2d 1443, 1446 (Fed. Cir. 1990). Whether he calls it an established royalty or not, Mr. Clemons cannot

rely solely on the Dartmouth-ChromaDex License alone to set his reasonable royalty.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court exclude Mr. Clemons' unreliable reasonable royalty opinions, or at minimum preclude him from testifying as to the comparability of the Cornell and Mayo Licenses.

Dated: April 27, 2021

OF COUNSEL:
Christopher N. Sipes
R. Jason Fowler
Ashley Winkler
Emily Mondry
Evan S. Krygowski
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
(202) 662-6000
csipes@cov.com
jfowler@cov.com
awinkler@cov.com
emondry@cov.com
ekrygowski@cov.com

Patrick Flynn
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
(650) 632-4732
pflynn@cov.com

James F. Haley, Jr.
HALEY GUILIANO LLP
75 Broad Street, Suite 1000
New York, NY 10004
(646) 973-2500
james.haley@hglaw.com

Respectfully submitted,

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*s/ Adam W. Poff*
Adam W. Poff (No. 3990)
Pilar G. Kraman (No. 5199)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
pkraman@ycst.com

*Counsel for Plaintiffs ChromaDex, Inc.
and Trustees of Dartmouth College*

Dated:  April 27, 2021

Respectfully submitted,

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*s/ Adam W. Poff*
Adam W. Poff (No. 3990)
Pilar G. Kraman (No. 5199)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
pkraman@ycst.com

OF COUNSEL:

Christopher N. Sipes
R. Jason Fowler
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
 (202) 662-6000

*Counsel for Plaintiffs ChromaDex, Inc.*
*and Trustees of Dartmouth College*

# WORD COUNT CERTIFICATION

The undersigned counsel hereby certifies that ChromaDex, Inc. and Trustees of Dartmouth College's Opening Brief in Support of *Daubert* Motion to Exclude Testimony of Elysium's Damages Expert Alexander Clemons contains 1,933 words (exclusive of the title, caption, Table of Contents, Table of Authorities, List of Abbreviations, and signature block) in Times New Roman 14-point font.

Dated: April 27, 2021

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
Adam W. Poff (No. 3990)
Pilar G. Kraman (No. 5199)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
pkraman@ycst.com

*Counsel for Plaintiffs ChromaDex, Inc. and Trustees of Dartmouth College*

## <u>CERTIFICATE OF SERVICE</u>

I, Adam W. Poff, hereby certify that on May 4, 2021, I caused to be

electronically filed a true and correct copy of the foregoing document with the

Clerk of the Court using CM/ECF, which will send notification that such filing is

available for viewing and downloading to the following counsel of record:

Steven J. Balick
Andrew C. Mayo
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
Wilmington, DE 19899
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

Donald R. Ware
Peter G. Ellis
Jeremy A. Younkin
Urszula Nowak
Marco J. Quina
Richard Maidman
Joanna McDonough
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
dware@foleyhoag.com
pgellis@foleyhoag.com
jyounkin@foleyhoag.com
unowak@foleyhoag.com
mquina@foleyhoag.com
rmaidman@foleyhoag.com
jmcdonough@foleyhoag.com
elysiumdelaware-dist@foleyhoag.com

Jeffrey I. D. Lewis
Jenny Shum
FOLEY HOAG LLP
1301 Avenue of the Americas
New York, NY 10019
jidlewis@foleyhoag.com
jshum@foleyhoag.com

*Attorneys for Defendant*

I further certify that on May 4, 2021, I caused the foregoing document to be served via electronic mail upon the above-listed counsel.

Dated: May 4, 2021

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Adam W. Poff*
Adam W. Poff (No. 3990)
Pilar G. Kraman (No. 5199)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
apoff@ycst.com
pkraman@ycst.com

*Attorneys for Plaintiffs ChromaDex, Inc. and Trustees of Dartmouth College*