IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CHROMADEX, INC., AND
TRUSTEES OF DARTMOUTH
COLLEGE,

　　　　　　　　　　Plaintiffs,

　　　v.

ELYSIUM HEALTH, INC.,

　　　　　　　　　　Defendant.

Civil Action No. 18-1434-CFC

## <u>MEMORANDUM ORDER</u>

Pending before me is Defendant Elysium Health, Inc.'s Motion for

Attorneys' Fees and Costs.  D.I. 380.

### I.

Plaintiffs ChromaDex, Inc. and the Trustees of Dartmouth College

(collectively, ChromaDex) initiated this action in September 2018 with the filing

of the Complaint.  D.I. 1.  ChromaDex alleged in the Complaint that Elysium

infringed U.S. Patent Numbers 8,197,807 (the #807 patent) and 8,383,086 (the

#086 patent).  D.I. 1 ¶ 1.  The asserted patents claim compositions containing

isolated nicotinamide riboside (NR), a naturally occurring form of vitamin B3

found in a non-isolated form in cow's milk.  At the *Markman* hearing, ChromaDex

stipulated that the claim term "isolated [NR]" means "[NR] that is separated or

substantially free from at least some other components associated with the source

of [NR]." Tr. of Dec. 17, 2020 Hr'g at 29:2–9.

Elysium moved for summary judgment, arguing that the asserted claims

were invalid under 35 U.S.C. § 101. *See* D.I. 182; *ChromaDex, Inc. v. Elysium*

*Health, Inc.*, 561 F. Supp. 3d 460 (D. Del. 2021) (hereinafter *ChromaDex*). In its

brief filed in support of its summary judgment motion, Elysium cited *Association*

*for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 580 (2013) eleven

times. Central to Elysium's briefing was this argument:

> [The] Court's construction of "isolated" requires only
> that the NR be "separated or substantially free from at
> least some of the other components associated with the
> source." D.I. 152 (emphasis added). The "isolated"
> limitation does not make the claims patent eligible. On
> the contrary, under the Supreme Court's holding in
> *Myriad*, "isolating" a natural substance by separating,
> purifying, substantially freeing it, or otherwise isolating it
> from components of its source does not transform an
> unpatentable natural product into patentable subject
> matter.

D.I. 183 at 6.

I granted Elysium's motion and entered judgment in its favor because the

asserted claims are directed to a natural phenomenon, namely, "compositions

comprising isolated [NR], a naturally occurring vitamin present in cow milk."

*ChromaDex*, 561 F. Supp. 3d at 464 (cleaned up). In opposing the motion,

2

ChromaDex had argued that "[t]he use of isolated NR in the Asserted Claims requires that the NR in the claimed compositions be stable and bioavailable, allowing it to reach the bloodstream, enter the cell, and provide therapeutic effect," D.I. 278 at 4, and that "[b]ecause the NR in the claimed compositions is isolated— and therefore stable, bioavailable, and pure—the claimed compositions can be used to deliver effective amounts of NR to cells," D.I. 278 at 6–7. But as I noted in my Memorandum Opinion:

> the Supreme Court unanimously rejected this line of argument in *Association for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 580, 133 S.Ct. 2107, 186 L.Ed.2d 124 (2013). The Court held in *Myriad* that "a naturally occurring DNA segment is a product of nature and not patent-eligible merely because it has been isolated." *Id.* And it expressly rejected the argument that the asserted claims in that case were "saved by the fact that isolating DNA from the human genome severs chemical bonds and thereby creates a nonnaturally occurring molecule," because "Myriad's claims are simply not expressed in terms of chemical composition, nor do they rely in any way on the chemical changes that result from the isolation of a particular section of DNA."

*ChromaDex*, 561 F. Supp. 3d at 465.

ChromaDex's briefing in opposition to Elysium's summary judgment motion was noteworthy in that it mentioned *Myriad* just once and then only for the confusing—if not misleading—proposition that "isolation in claims was not

3

relevant to patent eligibility because there were no 'changes that result[ed] from the isolation.'" D.I. 278 at 3 (quoting *Myriad*, 569 U.S. at 593). But the Court in no way suggested in *Myriad* that isolation of a naturally occurring molecule is patent eligible as long as "changes" resulted from the molecule's isolation. On the contrary, the Court stated on page 593 of *Myriad*:

> Nor are Myriad's claims saved by the fact that isolating DNA from the human genome severs chemical bonds and thereby creates a nonnaturally occurring molecule. Myriad's claims are simply not expressed in terms of chemical composition, nor do they rely in any way on the *chemical* changes that result from the isolation of a particular section of DNA.

569 U.S. at 593 (emphasis added). The holding of *Myriad* is crystal clear—the mere isolating of a naturally occurring molecule without changing the chemistry of that molecule is not patent eligible under § 101. *See also id.* at 596 ("We merely hold that genes and the information they encode are not patent eligible under § 101 simply because they have been isolated from the surrounding genetic material."). And, as I noted in my Memorandum opinion, that holding—which ChromaDex essentially ignored—was dispositive when it came to deciding the summary judgment motion.

ChromaDex appealed my ruling. A unanimous panel of the Federal Circuit upheld the ruling. The court held in relevant part:

4

> As in *Myriad*, under the circumstances presented here, the act of isolating the NR compared to how NR naturally exists in milk is not sufficient, on its own, to confer patent eligibility. *See Myriad*, 569 U.S. at 590–93, 133 S.Ct. 2107. The claimed compositions remain indistinguishable from natural milk because, other than separation from some other components, the isolated NR is no different structurally or functionally from its natural counterpart in milk. . . . The claimed compositions do not exhibit markedly different characteristics from natural milk and are, therefore, invalid for claiming a patent-ineligible product of nature. *Cf. Myriad*, 569 U.S. at 579, 133 S.Ct. 2107 (concluding "that a naturally occurring DNA segment is a product of nature and not patent eligible merely because it has been isolated" (emphasis added)).

*ChromaDex, Inc. v. Elysium Health, Inc.*, 59 F.4th 1280, 1284 (Fed. Cir.), *cert.*

*denied*, 144 S. Ct. 330, 217 L. Ed. 2d 172 (2023) (hereinafter *Elysium*).

## II.

The Patent Act provides that "in exceptional cases [the court] may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).

In this case, ChromaDex's litigation position generally and with respect to *Myriad* specifically was so lacking in substance that it "stands out" from the dozens of § 101 challenges I have encountered as a judge in the last five years. And even though "the law of patent eligibility has perhaps become unpredictable and unclear on the fringes," *Finnavations LLC v. Payoneer, Inc.*, 2019 WL 1236358, at *1 (D. Del. Mar. 18, 2019), the law is very clear when, as here, the Supreme Court has addressed the specific issue presented. The fact that ChromaDex made *no attempt* to distinguish *Myriad* in its summary judgment briefing was telling. It was not able to do so. There was, in short, never any serious question that the asserted patents were invalid under *Myriad*. ChromaDex's litigation position, if not frivolous, was so feeble as to be exceptional for purposes of § 285.

In its opposition to Elysium's fee application, ChromaDex faults Elysium for "first rais[ing] *Myriad* in its invalidity contentions served in May 2020, more than 1.5 years after this lawsuit was filed." D.I. 391 at 4. This wily argument is consistent with ChromaDex's approach to Elysium's § 101 challenge and confirms for me the appropriateness of a fee award. What ChromaDex fails to note in its opposition brief is that the case had been stayed for much of 2019, *see* D.I. 27; D.I. 36, that the Scheduling Order was not put in place until March 2020, *see*

6

D.I. 40, and that, pursuant to the terms of the Scheduling Order, Elysium timely served its invalidity contentions on ChromaDex on May 29, 2020, D.I. 68.

ChromaDex also argues that it "believed that the Asserted Claims were analogous to the claims at issue in *Natural Alternatives [Int'l, Inc. v. Creative Compounds, LLC*, 918 F.3d 1338 (Fed. Cir. 2019)] and distinguishable from those in . . . *Myriad*." D.I. 391 at 13. But the asserted claims here are *not* analogous to the claims at issue in *Natural Alternatives*, and, in any event, ChromaDex made no attempt to distinguish—and could not have reasonably distinguished—the asserted claims from the claims in *Myriad*. Indeed, as the Federal Circuit noted, "[its] *Natural Alternatives* decision is *particularly instructive*," because the claimed beta-alanine dietary supplements in *Natural Alternatives* had "markedly different characteristics" that "distinguished" them from natural beta-alanine, whereas, "[h]ere, in contrast, the asserted claims do not have characteristics markedly different from milk." *Elysium*, 59 F.4th at 1284 (emphasis added).

Like Judge Andrews in *Finnavations*, in this case "I have rarely been more confident in the patent ineligibility of a set of claims or more confident in the unreasonableness of a Plaintiff's decision to sue on a patent." *Finnavations*, 2019 WL 1236358, at *1. Accordingly, I will grant Elysium's application for attorney fees.

7

\* \* \* \*

NOW THEREFORE, at Wilmington on this Twenty-fifth day of March in
2024, it is HEREBY ORRDERED that:

1. Elysium's Motion for Attorneys' Fees and Costs (D.I. 380) is
   GRANTED.

2. The Parties are directed to meet and confer regarding a schedule to
   resolve the amount of the fees award.  They shall submit a proposed
   schedule to the Court within two weeks.

CHIEF JUDGE